**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 08-204 |
| | ) | Judge Nora Barry Fischer |
| TEDDY V. DAVIS, | ) | (SEALED) |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I.  INTRODUCTION

Presently before the Court is attorney Alonzo Burney's CJA Form 20 voucher wherein he requests payment in the amount of $29,831.50 for his representation of Defendant Teddy V. Davis ("Defendant" or "Davis") in this matter.   Upon receipt of said voucher, the Court drafted a letter to Burney advising him that the Court was auditing his voucher and requested that he provide the Court with further support of his requests in writing or, at his option, during an ex parte conference with the Court.   Burney elected to explain his position during an ex parte conference, which the Court held on September 9, 2011.   At that time, Burney provided the Court with some explanation of the hours claimed in his voucher and, at the end of the hearing, presented the Court with his entire file[1] in this case as further support.   After reviewing all of Burney's files; submissions; and the transcript of the hearing,[2] and for the reasons that follow, the Court reduces the request for compensation from $29,831.50 to $6,837.50.

### II.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

---

[1]      The contents of Burney's case file is fully described in § II, *infra*.  (*See also* Docket No. 182).
[2]      The Court received the transcript of the hearing on September 15, 2011.  *See Transcript of Hearing on CJA Fee Petition, September 9, 2011 "9/9/11 Hr'g Trans.".*   The hearing transcript has not been filed of record because matters protected by the attorney-client privilege were discussed.

On May 20, 2008, a federal grand jury returned a two-count indictment against Davis and two co-defendants, Eric D. Purnell ("Purnell") and Darece N. Murphy ("Murphy"), charging each with conspiracy to distribute and possess with intent to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. § 846 (count one) and possession with intent to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 814(a)(1) and 841(b)(1)(A)(iii). (Docket No. 1). Both charges carried with them a statutory mandatory minimum penalty of 10 years. *See* 21 U.S.C. §§ 814(a)(1) and 841(b)(1)(A)(iii).

A preliminary hearing was held on July 2, 2008 before the Honorable Robert J. Mitchell. (Docket No. 18). Penn Hackney, Esquire of the Federal Public Defender's Office in this District represented Davis at that time. (*Id.*). At the hearing, Davis requested that counsel be appointed on his behalf and filled out a CJA 23 financial affidavit in support of said request. (*Id.*, Docket No. 19). Judge Mitchell granted Davis' request for appointed counsel and Mr. Burney was appointed to represent him. (Docket No. 31).

In conjunction with this appointment, Burney received a fax from the Federal Public Defender's Office, which states that he was appointed to represent Davis and included a copy of the relevant case files, including the Indictment and Indictment Memorandum. Burney's notes reflect that he attempted to visit Davis at the Allegheny County Jail on July 5, 2008, but when he arrived was advised by jail staff that Davis had been transferred to the North East Ohio Correctional Center. Although he did not meet with Davis, Burney requests that he be compensated for his time spent on this visit (0.2) and the associated travel to and from his office in McKeesport to the Allegheny County Jail (1.4). He also claims the following[3]:

---

[3]     The Court notes that the descriptions are truncated, i.e.; I/C = Interviews/Conferences; Records = Obtaining and Reviewing Records; Research / Writing = Legal Research and Brief Writing; and Travel = Travel Time.

| DATE | DESCRIPTION | I/C | RECORDS | RESEARCH/ WRITING | TRAVEL | RATE[4] | TOTAL |
|---|---|---|---|---|---|---|---|
| 7/2/2008 | Ct appt/review records | | 1 | | | 100 | 100 |
| 7/3/2008 | Research | | | 1 | | 100 | 100 |
| 7/3/2008 | PC - AUSA | 0.4 | | | | 100 | 40 |
| 7/5/2008 | Jail / Pittsburgh | 0.2 | | | 1.4 | 100 | 160 |
| 7/7/2008 | Conf.: AUSA / Defendant / Pretrial | 2 | | | 1.4 | 100 | 340 |
| 7/7/2008 | Review records | | 0.6 | | | 100 | 60 |
| | **SUBTOTALS** | **2.6** | **1.6** | **1** | **2.8** | **100** | **800** |

Burney represented Davis at his arraignment on July 7, 2008 and claims 0.6 hours and $60.00 for such representation. After the arraignment, Burney filed his first motion for the extension of time to file pretrial motions on July 15, 2008. (Docket No. 48). The Court granted said motion and the time for filing of pretrial motions was extended until September 17, 2008. (Docket No. 49). Burney seeks compensation for the following during this time period:

| DATE | DESCRIPTION | I/C | RECORDS | RESEARCH/ WRITING | TRAVEL | RATE | TOTAL |
|---|---|---|---|---|---|---|---|
| 7/15/2008 | Pick up disc / conf. AUSA | 0.6 | | | 1.4 | 100 | 200 |
| 7/15/2008 | Review disc. - records | | 2.4 | | | 100 | 240 |
| 7/15/2008 | Research | | | 2 | | 100 | 200 |
| 7/16/2008 | Conf / Defendant - Ohio | 2.3 | | | 3.5 | 100 | 580 |
| 7/31/2008 | Review Police Reports | | 3 | | | 100 | 300 |
| 8/8/2008 | Conf / Defendant - Ohio | 2.2 | | | | 100 | 220 |
| 9/2/2008 | Review Records | | 2 | | | 100 | 200 |
| 9/2/2008 | Research | | | 2 | | 100 | 200 |
| 9/3/2008 | Conf / Defendant - Ohio | 3.5 | | | | 100 | 350 |
| 9/17/2008 | PC(s) - AUSA Rivetti | 0.6 | | | | 100 | 60 |
| | **SUBTOTALS** | **9.2** | **7.4** | **4** | **4.9** | | **2550** |
| | **TOTAL-TO-DATE** | | | | | | **3350** |

---

[4] The hourly rates for services performed under the CJA are set forth in *Guide to Judiciary Policy*, Vol. 7A, Ch. 2, § 230.16(a). Given the length of this case, three different hourly rates are applicable, i.e., $100 from 1/1/2008 through 3/10/2009; $110 from 3/11/2009 through 12/31/2009; and $125 from 1/1/2010 to present. *Id.*

A second motion for extension of time within which to file pretrial motions was submitted on September 17, 2008. (Docket No. 62). This motion was also granted by the Court, extending the time period for the filing of pretrial motions until November 17, 2008. (Docket No. 63). In the interim, Murphy pled guilty to count one on September 24, 2008. (Docket No. 67). Burney claims the following time during the 60 days which were excluded under the Speedy Trial Act:

| DATE | DESCRIPTION | I/C | RECORDS | RESEARCH/ WRITING | TRAVEL | RATE | TOTAL |
|------|-------------|-----|---------|-------------------|--------|------|-------|
| 9/26/2008 | Conf / Defendant - Ohio | 1 | | | 3.5 | 100 | 450 |
| 10/17/2008 | Conf / Defendant - Ohio | 1 | | | | 100 | 100 |
| 10/22/2008 | PC - AUSA | 0.4 | | | | 100 | 40 |
| 10/22/2008 | Conf / Defendant - Ohio | 1 | | | | 100 | 100 |
| 10/29/2008 | PC - AUSA | 0.4 | | | | 100 | 40 |
| 11/7/2008 | PC - AUSA | 0.2 | | | | 100 | 20 |
| 11/7/2008 | Review Records | | 2 | | | 100 | 200 |
| 11/10/2008 | PC - AUSA | 0.4 | | | | 100 | 40 |
| 11/10/2008 | Research | | | 1 | | 100 | 100 |
| 11/12/2008 | Conf / Defendant - Ohio | 0.6 | | | | 100 | 60 |
| | **SUBTOTALS** | **5** | **2** | **1** | **3.5** | | **1150** |
| | **TOTAL-TO-DATE** | | | | | | **4500**[5] |

A third motion for extension of time was filed on November 14, 2008. (Docket No. 70). This motion was granted by the Court, extending the time period for the filing of pretrial motions until January 16, 2009. (Docket No. 73). The time claimed in this period is as follows:

| DATE | DESCRIPTION | I/C | RECORDS | RESEARCH/ WRITING | TRAVEL | RATE | TOTAL |
|------|-------------|-----|---------|-------------------|--------|------|-------|
| 12/10/2008 | Conf / Defendant - Ohio | 1 | | | | 100 | 100 |
| 12/27/2008 | Review Records | | 2 | | | 100 | 200 |
| 1/5/2009 | PC - AUSA | 0.6 | | | | 100 | 60 |

---

[5] At this point, on November 12, 2008, Burney had already claimed compensation of $4,500.00 for out-of-court time and $60 for in-court time– amounts which were already in excess of the total amounts claimed by counsel for co-defendants for their representation of Murphy and Purnell. (*See* Docket Nos. 90, 142).

| DATE | DESCRIPTION | I/C | RECORDS | RESEARCH/ WRITING | TRAVEL | RATE | TOTAL |
|---|---|---|---|---|---|---|---|
| 1/13/2009 | Conf / Defendant - Ohio | 1.6 | | | | 100 | 160 |
| | SUBTOTALS | 3.2 | 2 | 0 | 0 | | 520 |
| | TOTAL-TO-DATE | | | | | | 5,020 |

A fourth motion for extension of time was filed on January 9, 2009. (Docket No. 77). This motion was again granted by the Court, extending the time period for the filing of pretrial motions until March 17, 2009. (Docket No. 78). On January 23, 2009, co-defendant Darece Murphy was sentenced to 120 months incarceration. (Docket No. 82). Burney claimed the following during this period of excludable time:

| DATE | DESCRIPTION | I/C | RECORDS | RESEARCH/ WRITING | TRAVEL | RATE | TOTAL |
|---|---|---|---|---|---|---|---|
| 2/16/2009 | Review Records | | 1.2 | | | 100 | 120 |
| 2/16/2009 | PC - AUSA | 0.2 | | | | 100 | 20 |
| 2/23/2009 | Research | | | 1.2 | | 100 | 120 |
| 3/6/2009 | PC - AUSA | 0.4 | | | | 100 | 40 |
| 3/11/2009 | PC - AUSA | 0.4 | | | | 110 | 44 |
| 3/11/2009 | Conf / Defendant - Ohio | 2.5 | | | 3.5 | 110 | 660 |
| | SUBTOTALS | 3.5 | 1.2 | 1.2 | 3.5 | | 1004 |
| | TOTAL-TO-DATE | | | | | | 6024 |

On January 23, 2009, Assistant U.S. Attorney Amy Johnston entered her appearance. (Docket No. 83). Six weeks later, a fifth motion for extension of time to file pretrial motions was submitted on March 15, 2009. (Docket No. 84). Said motion was granted by the Court, extending the time period until May 18, 2009. (Docket No. 85). Burney filed a motion on Davis' behalf requesting that the Court direct the U.S. Probation Office to prepare a pre- plea presentence investigation report on March 27, 2009, which the Court granted on March 30, 2009. (Docket Nos. 88, 89). Burney requests the following compensation during this time period:

| DATE | DESCRIPTION | I/C | RECORDS | RESEARCH/ WRITING | TRAVEL | RATE | TOTAL |
|---|---|---|---|---|---|---|---|
| 3/22/2009 | PC - AUSA | 0.2 | | | | 110 | 22 |
| 3/24/2009 | Conf / Defendant - Ohio | 2 | | | | 110 | 220 |

| DATE | DESCRIPTION | I/C | RECORDS | RESEARCH/ WRITING | TRAVEL | RATE | TOTAL |
|---|---|---|---|---|---|---|---|
| 3/27/2009 | Draft / File - Early PSR | | | 1.6 | | 110 | 176 |
| 3/31/2009 | Conf / Defendant - Ohio | 1 | | | | 110 | 110 |
| 5/2/2009 | PC - Probation | 0.2 | | | | 110 | 22 |
| 5/4/2009 | PC - Probation | 0.3 | | | | 110 | 33 |
| 5/8/2009 | Conf / Defendant - Ohio | 0.8 | | | | 110 | 88 |
| | **SUBTOTALS** | **4.5** | **0** | **1.6** | **0** | | **671** |
| | **TOTAL-TO-DATE** | | | | | | **6695** |

A sixth motion for extension of time was then filed by the defense on May 7, 2009. (Docket No. 96). Said motion was granted, extending the time period from May 18, 2009 until July 16, 2009. (Docket No. 97). During that period, on July 7, 2009, Defendant filed a status report indicating that he was not prepared to change his plea at that time and that the Government was preparing to provide additional discovery related to the case. (Docket No. 104). Burney requests compensation during this time period as follows:

| DATE | DESCRIPTION | I/C | RECORDS | RESEARCH/ WRITING | TRAVEL | RATE | TOTAL |
|---|---|---|---|---|---|---|---|
| 5/26/2009 | PC - Probation | 0.2 | | | | 110 | 22 |
| 5/26/2009 | Review Records | | 1 | | | 110 | 110 |
| 6/5/2009 | PC - AUSA | 0.2 | | | | 110 | 22 |
| 6/5/2009 | Review Letter | | 0.2 | | | 110 | 22 |
| 6/5/2009 | Research | | | 1 | | 110 | 110 |
| 6/8/2009 | Conf / Defendant - Ohio | 1.8 | | | | 110 | 198 |
| 6/11/2009 | PC - AUSA | 0.2 | | | | 110 | 22 |
| 6/11/2009 | Review Records | | 1 | | | 110 | 110 |
| 6/19/2009 | Conf / Defendant - Ohio | 1 | | | | 110 | 110 |
| 6/27/2009 | Conf / Defendant - Ohio | 1 | | | | 110 | 110 |
| 6/29/2009 | PC - AUSA | 0.4 | | | | 110 | 44 |
| 6/30/2009 | Review Records | | 1 | | | 110 | 110 |
| 6/30/2009 | PC - AUSA | 0.6 | | | | 110 | 66 |
| 6/30/2009 | Conf / Defendant - Ohio | 2 | | | 3.5 | 110 | 605 |
| 7/10/2009 | PC - AUSA | 0.4 | | | | 110 | 44 |
| 7/13/2009 | PC - AUSA / Agent | 0.6 | | | | 110 | 66 |
| 7/14/2009 | Conf / Defendant - Ohio | 1.8 | | | | 110 | 198 |
| | **SUBTOTALS** | **10.2** | **3.2** | **1** | **3.5** | | **1969** |
| | **TOTAL-TO-DATE** | | | | | | **8664** |

Within a week, a seventh motion for extension of time was filed on July 12, 2009. (Docket No. 106). Said motion was granted, extending the time until September 15, 2009. (Docket No. 107). Burney seeks to be compensated for the following tasks during this period:

| DATE | DESCRIPTION | I/C | RECORDS | RESEARCH/ WRITING | TRAVEL | RATE | TOTAL |
|------|-------------|-----|---------|-------------------|--------|------|-------|
| 8/19/2009 | Conf / Defendant - Ohio | 2.3 | | | | 110 | 253 |
| 9/2/2009 | Conf / Defendant - Ohio | 1.7 | | | | 110 | 187 |
| | SUBTOTALS | 4 | 0 | 0 | 0 | | 440 |
| | TOTAL-TO-DATE | | | | | | 9104 |

Defendant's eighth motion for extension of time was filed on September 15, 2009. (Docket No. 114). This motion was also granted, extending the time until November 16, 2009. (Docket No. 115). In this time period, co-defendant Purnell pled guilty to count one pursuant to a plea agreement with the Government on November 12, 2009. (Docket No. 123). This period of time resulted in the following claims for compensation:

| DATE | DESCRIPTION | I/C | RECORDS | RESEARCH/ WRITING | TRAVEL | RATE | TOTAL |
|------|-------------|-----|---------|-------------------|--------|------|-------|
| 11/4/2009 | Conf / Defendant - Ohio | 3 | | | 3.5 | 110 | 715 |
| 11/9/2009 | PC - AUSA & Cocounsel | 0.4 | | | | 110 | 44 |
| 11/11/2009 | Conf / Defendant - Ohio | 2.2 | | | 3.5 | 110 | 627 |
| 11/12/2009 | Conf - cocounsel & AUSA | 0.8 | | | 1.4 | 110 | 242 |
| 11/12/2009 | Review records - codefendant | | 1 | | | 110 | 110 |
| 11/13/2009 | Review records | | 1 | | | 110 | 110 |
| | SUBTOTALS | 6.4 | 2 | 0 | 8.4 | | 1848 |
| | TOTAL-TO-DATE | | | | | | 10952 |

Defendant's ninth motion for extension of time was filed on November 17, 2009. (Docket No. 127). This motion was granted, extending the time until January 15, 2010. (Docket No. 128). In this two month period, these requests for payment were made by Burney for the representation he allegedly provided Davis:

| DATE | DESCRIPTION | I/C | RECORDS | RESEARCH/ | TRAVEL | RATE | TOTAL |
|------|-------------|-----|---------|-----------|--------|------|-------|

| DATE | DESCRIPTION | I/C | RECORDS | RESEARCH/ WRITING | TRAVEL | RATE | TOTAL |
|------|-------------|-----|---------|-------------------|--------|------|-------|
| 12/24/2009 | PC - AUSA | 0.2 | | | | 110 | 22 |
| 12/29/2009 | Review Records | | 1 | | | 110 | 110 |
| 1/5/2010 | Conf - co-defendant - witness | 0.8 | | | 3.5 | 125 | 537.5 |
| 1/5/2010 | PC - cocounsel | 0.4 | | | | 125 | 50 |
| 1/8/2010 | PC - AUSA | 0.4 | | | | 125 | 50 |
| | **SUBTOTALS** | **1.8** | **1** | **0** | **3.5** | | **769.5** |
| | **TOTAL-TO-DATE** | | | | | | **11721.50** |

Defendant's tenth motion for extension of time was filed on January 15, 2010. (Docket No. 129). This motion was granted, extending the time for filing motions until March 16, 2010. (Docket No. 130). In the interim, on March 11, 2010, co-defendant Purnell was sentenced to 120 months' incarceration. (Docket Nos. 135, 136). Burney requests payment for the following:

| DATE | DESCRIPTION | I/C | RECORDS | RESEARCH/ WRITING | TRAVEL | RATE | TOTAL |
|------|-------------|-----|---------|-------------------|--------|------|-------|
| 1/27/2010 | PC - AUSA | 0.6 | | | | 125 | 75 |
| 1/28/2010 | Conf / Defendant - ACJ | 1.7 | | | 1.4 | 125 | 387.5 |
| 2/5/2010 | PC - AUSA | 0.2 | | | | 125 | 25 |
| 2/5/2010 | Conf / Defendant - ACJ | 1.4 | | | 1.4 | 125 | 350 |
| 2/7/2010 | Review records for meeting | | 2 | | | 125 | 250 |
| 2/8/2010 | PC - AUSA | 0.4 | | | | 125 | 50 |
| 2/16/2010 | PC - AUSA | 0.8 | | | | 125 | 100 |
| | **SUBTOTALS** | **5.1** | **2** | **0** | **2.8** | | **1237.5** |
| | **TOTAL-TO-DATE** | | | | | | **12959** |

Defendant's eleventh motion for extension of time was filed on March 15, 2010. (Docket No. 138). Said motion was granted, extending the time until May 17, 2010. (Docket No. 139).

| DATE | DESCRIPTION | I/C | RECORDS | RESEARCH/ WRITING | TRAVEL | RATE | TOTAL |
|------|-------------|-----|---------|-------------------|--------|------|-------|
| 3/19/2010 | Conf / Defendant - ACJ | 1.3 | | | 1.4 | 125 | 337.5 |
| 5/13/2010 | Conf / Defendant - ACJ | 2 | | | 1.4 | 125 | 425 |
| | **SUBTOTALS** | **3.3** | **0** | **0** | **2.8** | | **762.5** |
| | **TOTAL-TO-DATE** | | | | | | **13721.5** |

Defendant's twelfth motion for extension of time was filed on May 16, 2010. (Docket No. 140). This motion was granted, extending the time until July 16, 2010. (Docket No. 141). On that date, Defendant filed several pretrial motions. (Docket Nos. 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153). Burney asks for the following remuneration for his preparation and filing of said pretrial motions:

| DATE | DESCRIPTION | I/C | RECORDS | RESEARCH/ WRITING | TRAVEL | RATE | TOTAL |
|---|---|---|---|---|---|---|---|
| 6/21/2010 | Review Records | | 2 | | | 125 | 250 |
| 6/21/2010 | Research | | | 2 | | 125 | 250 |
| 6/23/2010 | Review Records | | 2 | | | 125 | 250 |
| 6/24/2010 | Research | | | 3 | | 125 | 375 |
| 6/26/2010 | Research | | | 2 | | 125 | 250 |
| 6/28/2010 | Review Records | | 1 | | | 125 | 125 |
| 6/28/2010 | Research | | | 1.4 | | 125 | 175 |
| 7/7/2010 | Preparation Motions Outline | | | 3 | | 125 | 375 |
| 7/9/2010 | Research | | 2 | | | 125 | 250 |
| 7/9/2010 | Review Outline | | | 1.6 | | 125 | 200 |
| 7/12/2010 | Preparation Motions | | | 2.8 | | 125 | 350 |
| 7/13/2010 | Preparation Motions | | | 2.4 | | 125 | 300 |
| 7/14/2010 | Conf / Defendant - ACJ | 1.4 | | | 1.4 | 125 | 350 |
| 7/15/2010 | Preparation Motions | | | 2.8 | | 125 | 350 |
| 7/16/2010 | Preparation / Filing Motions | | | 2 | | 125 | 250 |
| | **SUBTOTALS** | **1.4** | **7** | **23** | **1.4** | | **4100** |
| | **TOTAL-TO-DATE** | | | | | | **17821.5** |

Considering the amounts claimed in his time sheets, Burney seeks compensation of $17,821.50 for out-of-court time and $60.00 of in-court time prior to filing his pretrial motions on July 16, 2010. Pursuant to the Local Criminal Rules, the Government's responses to Defendant's pretrial motions would have been due by July 30, 2010. W.D.Pa.L.Cr.R. 12(C). However, the Government filed a nunc pro tunc motion for extension of time to file its responses, which was granted by the Court, extending the time period for the Government's

response until September 9, 2010.  (Docket Nos. 154, 155).  In these two months, Burney claims that he completed the following compensable tasks:

| DATE | DESCRIPTION | I/C | RECORDS | RESEARCH/ WRITING | TRAVEL | RATE | TOTAL |
|------|-------------|-----|---------|-------------------|--------|------|-------|
| 7/19/2010 | PC - AUSA | 1 | | | | 125 | 125 |
| 7/19/2010 | Conf / Defendant - ACJ | 1.4 | | | 1.4 | 125 | 350 |
| 7/21/2010 | Conf / Defendant - ACJ | 1.1 | | | | 125 | 137.5 |
| 7/22/2010 | Conf / Defendant - ACJ | 2.8 | | | 1.4 | 125 | 525 |
| 7/23/2010 | PC - AUSA | 0.3 | | | | 125 | 37.5 |
| 7/26/2010 | PC - AUSA | no time | | | | 125 | 0 |
| 7/26/2010 | Conf / Defendant - ACJ | 0.5 | | | 1.4 | 125 | 237.5 |
| 7/27/2010 | Conf - AUSA / Agents/Def Cthse | 2.5 | | | 1.4 | 125 | 487.5 |
| 8/2/2010 | Conf - Defendant - ACJ | 1.3 | | | 1.4 | 125 | 337.5 |
| 8/4/2010 | Conf - Defendant - ACJ | 0.6 | | | 1.4 | 125 | 250 |
| 8/10/2010 | Conf - Defendant - ACJ | 1 | | | 1.4 | 125 | 300 |
| | **SUBTOTALS** | **12.5** | **0** | **0** | **9.8** | | **2787.5** |
| | **TOTAL-TO-DATE** | | | | | | **20609** |

On September 10, 2010, the Government filed its second motion for extension of time to file its responses.  (Docket No. 156).  The Court granted this motion as well and extended the time period until October 8, 2010.  (Docket No. 157).  Burney has only one time entry for this period of time:

| DATE | DESCRIPTION | I/C | RECORDS | RESEARCH/ WRITING | TRAVEL | RATE | TOTAL |
|------|-------------|-----|---------|-------------------|--------|------|-------|
| 9/21/2010 | Conf - Defendant - ACJ | 0.9 | | | | 125 | 112.5 |
| | **SUBTOTALS** | **0.9** | | | | | **112.5** |
| | **TOTAL-TO-DATE** | | | | | | **20721.5** |

The Government filed its third motion for extension of time to file its responses to the Defendant's pending motions on October 8, 2010.  (Docket No. 158).  The Court granted this motion and extended the time period until October 25, 2010.  (Docket No. 159).  Burney did not make a claim for this period.  The Government then brought its fourth motion for extension of

time to file its responses on October 27, 2010. (Docket No. 160). Said motion was again granted, extending the time until November 24, 2010. (Docket No. 161). Burney claims the following time in October:

| DATE | DESCRIPTION | I/C | RECORDS | RESEARCH/ WRITING | TRAVEL | RATE | TOTAL |
|------|-------------|-----|---------|-------------------|--------|------|-------|
| 10/26/2010 | Review Agreement | | 1.8 | | | 125 | 225 |
| 10/26/2010 | Research | | | 2.4 | | 125 | 300 |
| 10/28/2010 | Conf / Defendant - ACJ | 0.7 | | | | 125 | 87.5 |
| | **SUBTOTALS** | **0.7** | **1.8** | **2.4** | **0** | | **612.5** |
| | **TOTAL-TO-DATE** | | | | | | **21334** |

The Government failed to file its responses by the extended deadline. Hence, the Court set a telephone status conference for November 30, 2010. (Text Order 11/29/10). In the interim, on November 29, 2010, the Government filed its fifth motion for extension of time. (Docket No. 162). During the telephone conference, counsel provided the Court with information regarding the parties' positions in the case and the Court reluctantly granted the Government's motion, extending the time period until December 19, 2010. (Text Entry 11/30/10; Docket No. 163). However, the Court scheduled another status conference and held it on December 7, 2010, during which counsel informed the Court that the disposition of the case remained uncertain and defense counsel still needed to meet and discuss it further with his client.[6] (Text Entry 12/7/10). Subsequently, on December 17, 2010, the Court was advised that Defendant was now ready to change his plea to guilty and the Court scheduled a change of plea hearing for December 28, 2010. (Docket No. 164). During this month, Burney claims that he completed a significant amount of legal work, specifically:

| DATE | DESCRIPTION | I/C | RECORDS | RESEARCH/ WRITING | TRAVEL | RATE | TOTAL |
|------|-------------|-----|---------|-------------------|--------|------|-------|

---

[6]     The Court now views Burney's claim that he needed to further discuss the matter with his client as specious, given that his time records show that he allegedly met with Davis on December 2, December 4 and December 6, 2010.

| | | | | | | |
|---|---|---|---|---|---|---|
| 11/29/2010 | PC - AUSA | 1 | | | | 125 | 125 |
| 11/29/2010 | Review Agreement | | 1.4 | | | 125 | 175 |
| 11/29/2010 | Research | | | 2 | | 125 | 250 |
| 11/30/2010 | Tele Conf w/ Ct /AUSA | 0.3 | | | | 125 | 37.5 |
| 12/2/2010 | Conf / Defendant - ACJ | 0.4 | | | 1.4 | 125 | 225 |
| 12/4/2010 | Research | | | 1.2 | | 125 | 150 |
| 12/4/2010 | Conf / Defendant - ACJ | 2 | | | 1.4 | 125 | 425 |
| 12/5/2010 | Review Records | | 1.2 | | | 125 | 150 |
| 12/5/2010 | Research | | | 1.4 | | 125 | 175 |
| 12/6/2010 | PC - AUSA | 0.2 | | | | 125 | 25 |
| 12/6/2010 | Conf / Defendant - ACJ | 1.5 | | | | 125 | 187.5 |
| 12/7/2010 | PC - AUSA | 0.6 | | | | 125 | 75 |
| 12/9/2010 | Conf / Defendant - ACJ | 1.5 | | | 1.4 | 125 | 362.5 |
| 12/9/2010 | PC - AUSA | 0.2 | | | | 125 | 25 |
| 12/11/2010 | Conf / Defendant - ACJ | 1.5 | | | 1.4 | 125 | 362.5 |
| 12/13/2010 | PC - AUSA | 0.4 | | | | 125 | 50 |
| 12/13/2010 | Review Records | | 1.4 | | | 125 | 175 |
| 12/17/2010 | Conf - AUSA | 0.8 | | | | 125 | 100 |
| 12/20/2010 | Review New Agreement | | 1.6 | | | 125 | 200 |
| 12/22/2010 | Conf / Defendant - ACJ | 1.5 | | | 1.4 | 125 | 362.5 |
| 12/28/2010 | Conf / Defendant - ACJ | 0.8 | | | 1.4 | 125 | 275 |
| | **SUBTOTALS** | **12.7** | **5.6** | **4.6** | **8.4** | | **3912.5** |
| | **TOTAL-TO-DATE** | | | | | | **25,246.50** |

As scheduled, Defendant pled guilty pursuant to a plea agreement with the Government on December 28, 2010.[7] (Docket No. 166). The parties' plea agreement provided, among other things, that the parties agreed that the career offender guideline should not apply in this case, that the otherwise applicable guideline range should control except that the mandatory minimum sentence of 120 months was applicable. *See 12/20/10 Plea Agreement* at ¶¶ C.1, C.3. All told, the plea agreement resulted in the parties essentially bargaining for a 120 month sentence. *Id.*

The Court then issued a Presentence Order, scheduling Defendant's sentencing on April 29, 2011 at 11:00 a.m. and other attendant deadlines. (Docket No. 167). The Court later

---

[7] Burney claims one hour of in-court time for his representation of Davis during the change of plea proceeding.

rescheduled the sentencing for May 3, 2011 at 11:30 a.m. (Docket No. 168). After considering the Presentence Investigation Report, the parties' positions with respect to sentencing factors and the Addendum, the Court issued its Tentative Findings and Rulings on April 20, 2011. (Docket No. 177). The Court stated that it would accept the parties' plea agreement, disregard the career offender guideline, and apply the mandatory minimum sentence of 120 months in this case. (*Id.*). At sentencing, a sentence of 120 months' incarceration was imposed, to be followed by five years of supervised release and a $100 special assessment was ordered. Defense counsel claims payment for the following between Davis' guilty plea and sentencing:

| DATE | DESCRIPTION | I/C | RECORDS | RESEARCH/ WRITING | TRAVEL | RATE | TOTAL |
|------|-------------|-----|---------|-------------------|--------|------|-------|
| 1/11/2011 | Conf / Defendant - ACJ | 1.5 | | | 1.4 | 125 | 362.5 |
| 2/2/2011 | Conf / Probation & Def - ACJ | 1.4 | | | 1.4 | 125 | 350 |
| 3/4/2011 | Review PSR | | 1.6 | | | 125 | 200 |
| 3/4/2011 | Research | | | 1.4 | | 125 | 175 |
| 1/26/2011 | Conf - Defendant - ACJ | 1.4 | | | | 125 | 175 |
| 3/12/2011 | Review PSR | | 1 | | | 125 | 125 |
| 3/14/2011 | Conf / Defendant - ACJ | 1 | | | 1.4 | 125 | 300 |
| 3/14/2011 | PC - AUSA - Probation | 0.6 | | | | 125 | 75 |
| 3/24/2011 | Review Final PSR | | 1.4 | | | 125 | 175 |
| 3/31/2011 | Conf / Defendant - ACJ | 1.5 | | | 1.4 | 125 | 362.5 |
| 4/2/2011 | Review PSR | | 0.6 | | | 125 | 75 |
| 4/2/2011 | Research | | | 0.6 | | 125 | 75 |
| 4/4/2011 | Draft / File - Position | | | 1.8 | | 125 | 225 |
| 4/19/2011 | Review PSR Addendum | | 0.2 | | | 125 | 25 |
| 4/19/2011 | Conf / Defendant - ACJ | 1.2 | | | 1.4 | 125 | 325 |
| 4/20/2011 | PC - AUSA / Counsel / Ct. | 0.2 | | | | 125 | 25 |
| 4/20/2011 | PC - BOP - FPD | 0.6 | | | | 125 | 75 |
| 4/20/2011 | Research | | | 1 | | 125 | 125 |
| 4/20/2011 | PC - Witnesses | 0.8 | | | | 125 | 100 |
| 4/20/2011 | Review Tentative Findings | | 1 | | | 125 | 125 |
| 4/21/2011 | Conf / Defendant - ACJ | 0.6 | | | | 125 | 75 |
| 4/30/2011 | Conf / Defendant - ACJ | 1.4 | | | 1.4 | 125 | 350 |
| 5/2/2011 | Review Records for hearing | | 1 | | | 125 | 125 |
| 5/3/2011 | Conf / Defendant / Witnesses | 1 | | | 1.4 | 125 | 300 |
| | **SUBTOTALS** | **13.2** | **6.8** | **4.8** | **9.8** | | **4325** |

| | TOTAL-TO-DATE | | | | | | 29571.50 |
|---|---|---|---|---|---|---|---|

Consistent with local practice, Burney submitted his fee petition to the Clerk's Office for an initial review on June 16, 2011.  His fee petition consists of: a CJA 20 Voucher; a 1-page In Court Hourly Worksheet; a 9-page Out of Court Hourly Worksheet; and a Supplemental Information Statement For a Compensation Claim in Excess of the Statutory Case Compensation Maximum: District Court.  After certain mathematical adjustments were made by the Court's Finance Office, altering the total amount claimed to $29,831.50, Burney's voucher was then submitted to this Court's Chambers on July 26, 2011.  At the outset, the Court was struck by the fact that the amount claimed, i.e., $29,831.50, appeared excessive, especially in light of the amounts claimed by appointed counsel for co-defendants Murphy and Purnell.[8]  Upon further consideration of the case file against the fee petition, the Court determined that an explanation was in order and sent a letter to Burney dated August 19, 2011, requesting that he provide the Court with additional information justifying the amounts claimed in his fee petition.  Burney responded requesting a conference with the Court.

As noted above, the Court held an ex parte conference on September 9, 2011 during which Burney was given the opportunity to further detail the time claimed in his voucher.  *See 9/9/11 Hr'g Trans*. at 1.  During this conference, Burney provided the Court with information concerning his background and experience, how he generally approaches criminal cases and some justification for the fee requests in this case.  He refused to reduce the fees claimed in this case but indicated that he had no interest in appealing the matter and stated that he would accept the Court's conclusion regarding what a reasonable fee is for his representation in this case.  At

---

[8]    To this end, counsel for co-defendant Murphy received $3,220.00 in compensation and counsel for co-defendant Purnell received $3,834.32 in compensation.  (Docket Nos. 90, 142).  *See also*, § III.B.2.a, *infra*.

the conclusion of the hearing, Burney provided the entire contents of his original case file for the Court's review. His case file includes all of the following:

1. Manila folder marked "Notes", containing 6 legal pads of handwritten notes marked Pad #1 through Pad #6
2. Other Expenses Worksheet (no time claimed)
3. Handwritten Memorandum dated 9/9/11 – 13 pages
4. Manila folder marked "Discovery" 2008, 2009, 2010, 2011, containing:
   a. Rule 16 discovery materials from U.S. Attorney's Office;
   b. Case pleadings;
   c. Presentence Investigation Report;
   d. Newsprint on case;
   e. Newsprint from U.S. Attorney's Office
   f. Other matters
5. Red Weld
   a. Pleadings;
   b. Research memos from other related and non-related cases;
   c. Manila folder containing- research memos; emails; and other communications
   d. Appointment papers
   e. Criminal Judgment

(Docket No. 182). A transcript of the conference was produced and provided to the Court. *See 9/9/11 Hr'g Trans*. Having reviewed Burney's submissions; file materials; and the facts of this case and having considered his arguments, his petition is now ripe for disposition.

## III. DISCUSSION

The Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A authorizes the Court to appoint counsel for indigent defendants and to compensate appointed counsel for his or her representation for time spent in court and "reasonably expended out of court." 18 U.S.C. § 3006A(d)(1). The CJA requires the Court to "fix the compensation and reimbursement to be paid" to appointed counsel. 18 U.S.C. § 3006A(d)(5). The maximum amount of compensation for counsel representing a defendant in a felony case before the district court is currently fixed at

$9,700.[9]   *Guide to Judiciary Policy, Vol. 7A,* § 230.23.20.[10]   "Payment in excess of any maximum amount … may be made for extended or complex representation" but only if the presiding judge "certifies that the amount of the excess payment is necessary to provide fair compensation."  18 U.S.C. § 3006A(d)(3).  Any voucher approved by the district court in excess of the maximum amount must then be forwarded to the appointed Circuit Judge for further review and approval.  *Id.*

This Court has an "inherent obligation to scrutinize [fee] requests, make necessary adjustments, and [ … ] safeguard [ … ] taxpayer provided funds" which are used to pay the fees requested by appointed counsel.  *United States v. Smith,* 76 F.Supp.2d 767, 768 (S.D.Tex. 1999). "[I]t is the duty of the Court to determine what is a reasonable expense or a reasonable use of billable time, and to determine exactly what compensation and reimbursement will be paid." *United States v. Mosley,* 779 F.Supp.2d 398, 400 (D.N.J. 2011).   Review of any voucher submitted to the Court is a two-step process: first, the Court must determine if the case is extended or complex; and second, the Court must decide whether the fees requested are reasonable.   *Id.*   "'Attorneys seeking compensation have the burden of providing sufficient details to support the contention that a case is more complex or time-consuming than the average case,' and that the hours claimed are reasonable."  *United States v. Mukhtarr,* 2008 WL 2151798, at *2 (S.D.N.Y. May 21, 2008) (quoting *United States v. Diaz,* 802 F.Supp. 304, 308 (C.D. Cal. 1992)).  The Court will evaluate each of these prongs of the applicable test, in turn.

---

[9]       The Court notes that the case compensation maximums have steadily increased throughout the pendency of this case.  The case compensation maximums for a felony are as follows: from 12/8/04 to 10/13/08 - $7,000; from 10/13/08 to 3/11/09 - $7,800; from 3/11/09 to 1/1/10 - $8,600; and from 1/1/10 to present - $9,700.   *Guide to Judiciary Policy, Vol. 7A,* § 230.23.30.

[10]       The Court notes that the certain provisions of the Guidelines were revised effective October 24, 2011. However, Burney submitted all of his materials to the Court as of September 9, 2011, prior to the effective date of the changes.  Accordingly, the Court applies the version of the Guidelines in effect on the date of his submissions, i.e., as of January 20, 2010.  *See Guide Redesign Transmittal, GR-17* http://www.uscourts.gov/FederalCourts/ AppointmentOfCounsel/Viewer.aspx?doc=/uscourts/FederalCourts/AppointmentOfCounsel/vol7/Vol_07A.pdf  (last visited 11/29/11).

*A. Complex Case / Extended Representation*

In this Court's estimation, this case was not complex nor was the representation extended warranting compensation above the maximum of $9,700.00. A case is considered complex under the CJA if the "legal or factual issues in a case are unusual, thus requiring the expenditure of more time, skill and effort by the lawyer than would normally be required in an average case." *Tillman*, 2010 WL 2245033, at *1. Extended representation is representation that "involves more time than what is required in the usual case." *Id.*

Burney first argues that this case involved extended representation because the case "lasted almost four years." Burney's statement that this case "lasted almost four years" is inaccurate. He was appointed as counsel for Davis on July 2, 2008 and Davis' sentencing was on May 3, 2011 – resulting in a period of representation of two years, ten months and 1 day. (*See* Crim. No. 08-204). The Court agrees that two years, ten months and 1 day is a long period of time for a criminal case to remain pending in this District. However, "the mere passage of time is not the criteria for determining whether a case is 'extended.'" *Mosley*, 779 F.Supp.2d at 401. Instead, counsel must demonstrate why this case required more time than the usual case, necessitating excess compensation. *See Tillman*, 2010 WL 2245033, at *1.

The lengthy delays in this case can be attributed, in part, to the many motions for extension of time filed by the defense. *See Tray*, 2009 WL 82228, at *1 ("Counsel represented defendant in this case from August 2006 until November 2008. The length of time from when counsel became involved until resolution, however, was in some measure due to the fact that counsel sought and obtained seven extensions of time, each one of thirty days or longer, to file pretrial motions."). To this end, defense counsel filed twelve motions for extension of time to file pretrial motions, each of which the Court granted, excluding the period of time from July 15,

2008 through July 16, 2010 under the Speedy Trial Act before any pretrial motions were filed. (Docket Nos. 48, 62, 70, 77, 84, 96, 106, 114, 127, 129, 138, 140). Therefore, a full two years of the time while this case was pending is attributable to the requests for extensions by the Defendant.

Burney provided some explanation for why this many extensions were needed. He contended that the initial prosecutor and case agent were reassigned to another matter during the pendency of Davis' case, causing substantial delays. The Court accepts that the prosecutor and case agent were so reassigned. To this end, FBI Special Agent Sam Hicks was shot and killed in the line of duty on November 19, 2008. *See* Crim. No. 09-05, *United States v. Christina Marie Korbe*. The United States Attorney then brought a case against Christina Korbe by filing a criminal complaint against her on December 8, 2008 and later indicted her on January 8, 2009. *Id.* at Docket Nos. 1, 10. As Troy Rivetti was the lead prosecutor in the *Korbe* matter, Amy Johnston entered her appearance on January 23, 2009, substituting for Rivetti in this case. Given that, the prosecution of the *Korbe* case was a high priority matter for the FBI and other involved federal agencies and required a substantial effort from agency staff, it likely necessitated the reassignment of the case agent.

In this Court's opinion, the changes in the prosecuting personnel by the U.S. Attorney's Office and federal agencies certainly help to explain some of the delays in this case. However, these changes do not explain how or why the time needed by Burney in preparing Davis' case increased exponentially above that required of appointed counsel for his co-defendants, particularly in Purnell's case which would have been similarly affected by the reassignments caused by the *Korbe* matter. In this regard, Purnell's counsel was appointed around the same time as Burney, i.e., July 3, 2008, and Purnell's case was resolved on March 11, 2010. (*See*

Docket Nos. 27, 136). However, Purnell's counsel only claimed $3,832.42 total in counsel fees – an amount which does not even approach the case maximum let alone soar past it as does Burney's requests for payment. (Docket No. 142). Although there were delays in this case, they were not sufficient to constitute "extended representation" under the CJA, as this Court sees it. *See Tillman*, 2010 WL 2245033, at *1.

The Court also finds that this case was not complex. The federal indictment charged three individuals with engaging in a crack cocaine conspiracy. (Docket No. 1). Each faced significant penalties – including a mandatory minimum sentence of 10 years. (Docket No. 2); 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(iii) (2008).[11] However, the facts and circumstances of the case were straightforward. Police were investigating a shooting in the area where Murphy lived. PIR at ¶ 8. During their investigation, the officers knocked on the door to Murphy's home and she granted the police consent to search the premises. *Id.* Davis and Purnell were both present at the time. *Id.* at ¶ 9. The officers searched the home and found in excess of 50 grams of crack cocaine and drug paraphernalia. *Id.* at ¶ 8. Some of the crack cocaine was "warm to the touch" indicating that they were actively manufacturing the drug in the moments prior to the search. *Id.*

The officers arrested Davis and Purnell, charging them with violations of state narcotics laws. *Id.* at ¶¶ 9, 11, 40. Both have extensive criminal backgrounds and prior narcotics convictions in the Detroit area. *Id.* at ¶ 10. Murphy also has a lengthy criminal history, but she was not initially arrested because she provided police with a false name and members of her family apparently backed up her story for some time. *Id.* at ¶¶ 8, 9. She told police initially that Davis was not involved with the drugs but was only present in the home because they were

---

[11] The Court notes that the Fair Sentencing Act did not apply to this case and the parties stipulated in a plea agreement that the "penalty that may be imposed upon Teddy V. Davis is … [a] term of imprisonment of not less than ten (10) years and up to life." *12/20/10 Plea Letter* at § C.1(a).

dating and he was on a romantic visit. *9/9/11 Hr'g Trans* at 16-17. All three co-defendants eventually admitted their involvement and pled guilty. (Docket Nos. 67, 125, 166).

Despite his best efforts, Burney has not convinced this Court that this was anything more than a routine case wherein three individuals were indicted for their involvement in a crack cocaine conspiracy.[12] However, the Court will review his arguments. Burney primarily cites three separate reasons in support of his position that the instant case was complex: (1) pretrial suppression issues resulting from the warrantless search of Murphy's home; (2) his negotiation of an alleged novel plea agreement with the Assistant United States Attorneys assigned to the case and attendant delays caused by the prosecution; and, (3) sentencing issues including the application of the crack cocaine guidelines and the career offender guidelines to Davis' case. *9/9/11 Hr'g Trans* at 9-13, 17-18.

First, the Fourth Amendment issues raised by Davis in his motion to suppress involved a challenge to a warrantless search of a home where he was present, which are typical issues that are frequently litigated in criminal cases. *See United States v. Price*, 558 F.3d 270, 277-79 (3d Cir. 2009) (warrantless search of residence did not violate Fourth Amendment after co-resident voluntarily consented to the search).[13] In this Court's estimation, the factual and legal issues

---

[12]     The statistics compiled by the Sentencing Commission support the conclusion that the instant crack cocaine case is routine. In 2010, 18.4% of all defendants sentenced in the U.S. District Court for the Western District of Pennsylvania committed offenses involving crack cocaine. *See Statistical Information Packet, Fiscal Year 2010, Western District of Pennsylvania*, at Fig. A, *available at*:
http://www.ussc.gov/Data_and_Statistics/Federal_Sentencing_Statistics/State_District_Circuit/2010/paw10.pdf (last visited 11/29/11). This figure was 11.5% in 2009 and 14.15% in 2008. *See Statistical Information Packet, Fiscal Year 2009, Western District of Pennsylvania*, at Fig A, *available at*:
http://www.ussc.gov/Data_and_Statistics/Federal_Sentencing_Statistics/State_District_Circuit/2009/paw09.pdf (last visited 11/29/11); *see also, Statistical Information Packet, Fiscal Year 2008, Western District of Pennsylvania*, at Fig A, *available at*:
http://www.ussc.gov/Data_and_Statistics/Federal_Sentencing_Statistics/State_District_Circuit/2008/paw08.pdf (last visited 11/29/11).
[13]     These general legal principles regarding warrantless searches of residences have been applied many times recently by the United States Court of Appeals for the Third Circuit. *See e.g., United States v. Livingston,* 2011 WL 4448744 (3d Cir. Sept. 27, 2011 (warrantless search of apartment did not violate Fourth Amendment rights of defendant after his girlfriend expressly consented to search); *United States v. Henderson*, 2011 WL 2728293 (3d Cir.

raised by Davis in the motion to suppress[14] were not unusual or complex.  *See United States v. Tillman*, 2010 WL 2245033, at *2 (W.D.Pa. Jun. 3, 2010) (noting that "the most significant pretrial issue related to a *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), traffic stop. The legal and factual issues surrounding that stop were not unusual or complex").  Indeed, the law in this area is well-settled and the weight of authority is generally against Davis' position given the facts of this case.  To this end, the Supreme Court has held that "[t]he Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained." *Georgia v. Randolph*, 547 U.S. 103, 106 (2006) (citing *Illinois v. Rodriguez*, 497 U.S. 177; *United States v. Matlock*, 415 U.S. 164 (1974)).

Here, Murphy consented to the police officers' search of her residence, where both Purnell and Murphy were present.  PIR at ¶¶ 8-10.  Admittedly, Davis could have challenged the voluntariness of Murphy's consent to the search by cross examining her at a suppression hearing. *See Stabile*, 633 F.3d at 230 (recognizing that consent is an exception to the warrant requirement but "must be given voluntarily").  Indeed, Burney explained that he was preparing to proceed in this fashion, but Davis pled guilty before the factual and legal issues were fully litigated.[15]

---

Jul. 14, 2011) (ineffective assistance of counsel claim unmeritorious because warrantless search of residence did not violate Fourth Amendment rights of defendant, whose wife consented to the search); *United States v. Stabile*, 633 F.3d 219 (3d Cir. 2011) (warrantless search of home did not violate Fourth Amendment rights of defendant, as co-habitant consented to the search).

[14]    As discussed in further detail below in conjunction with Burney's request for compensation for legal research and writing, the motion to suppress that was filed in this case was only 1 page long and contained 2 citations to authority.  *See* § III.B.2.d., *infra*.

[15]    Specifically, Burney stated that:

> So, the crux of this defense for Mr. Davis was either going to be to challenge the evidence, and how they obtained the evidence by violations of his Constitutional rights under the Fourth Amendment, in dealing with their probable cause, and also, in dealing with the fact that when he was arrested they had not found any of this evidence.

*9/9/11 Hr'g Trans* at 16-18. However, the Government never responded to Davis' motion to suppress and a hearing on the motion was not held. (*See* Cr. No. 08-204). Instead, Davis pled guilty pursuant to a plea agreement with the Government. (Docket Nos. 166, 177). Thus, the factual issues necessary to pursue this motion were never fully developed. Despite same, given this Court's familiarity with the facts of this case, this Court does not believe that the facts were so unusual or so complex to warrant compensation in excess of the pertinent maximum.

Burney next maintains that this case was complex because the plea negotiations resulted in a novel plea agreement whereby the Government agreed to forgo seeking the career offender enhancement against Defendant – which clearly applied – in exchange for a stipulation that the otherwise applicable advisory guideline range should apply, resulting in a sentence of the mandatory minimum of 10 years. *See 12/20/10 Plea Agreement* at ¶ C.3.[16] The Court acknowledges that the Government agreeing to a sentence below the advisory guideline range is uncommon but disagrees with Burney's position that the negotiations rendered this case complex under the CJA. First, plea negotiations, in and of themselves, are not novel since they occur in virtually every case. In fact, the Sentencing Commission reports that last year (2010), 95.8

_____

*9/9/11 Hr'g Trans.* at 18. Burney's second argument, that none of the evidence obtained in the house was found on Davis' person, was not specifically raised in his motion to suppress. (*See* Docket No. 148). Defendant may well have argued and presented evidence at trial to show that he was not involved in the instant drug trafficking conspiracy, as Burney suggested, but this case was resolved by a guilty plea before any trial date was contemplated or scheduled. Therefore, Burney's second argument also does not support a finding that the present case was complex.

[16]       Specifically, the Government and Davis stipulated that:

> The parties agree that, pursuant to the information set forth in the pre-guilt Criminal History Report prepared by the Probation Office in this case, the defendant technically qualifies as a career offender within the meaning of U.S.S.G. § 4B1.1. The parties further agree, however, that a downward variance is appropriate in this case, and that the defendant should be sentenced to the otherwise applicable sentencing guideline range, without regard to the career offender enhancement.

*12/20/10 Plea Agreement* at ¶ C.3.

percent of a total of 498 criminal cases in the Western District of Pennsylvania were resolved by guilty plea. *See United States Sentencing Commission, Statistical Information Packet, Fiscal Year 2010, Third Circuit, Table 2 – Guilty Pleas and Trials in Each Circuit and District*, *available at:* http://www.ussc.gov/Data_and_Statistics/Federal_Sentencing_Statistics/ State_District_Circuit/2010/3c10.pdf (last visited10/26/11). The statistics do not explicitly state what percentage of these cases involved a plea agreement. However, the sentencing data collected by the Sentencing Commission does show that only 7 of the 492 defendants who were sentenced in this District in 2010 (or 1.4% of the cases) were sentenced pursuant to a plea agreement with the Government whereby the Government agreed that the sentence imposed should be below the advisory guideline range. *See Id. at Table 9, Sentences Relative to the Guideline Range By Circuit and District*. The 2011 data is not yet available from the Sentencing Commission but the undersigned represents that she has approved and sentenced two defendants (including Davis) who were a party to such a plea agreement to this point in 2011. *See United States v. Lowery*, Cr. No. 08-147, Court's Tentative Findings and Rulings, Docket No. 198 (W.D.Pa. Jun. 22, 2011). The Court, thus, agrees that the plea negotiated in this case is unique in this District. But, the uniqueness of the plea agreement in this case does not automatically make the case complex. And, despite the total amounts claimed on the voucher, the amounts that can reasonably be attributed to the plea negotiations themselves (the time claimed between 10/26/10 and 12/28/10) do not support the current maximum fee allocation.

Burney also maintains that this case is complex due to the fact that the sentencing involved issues, primarily the potential application of the career offender guideline and the changes in crack cocaine guidelines. On this point, the Court agrees with the District Court in *United States v. Mosley*, which succinctly noted that:

23

> [i]ssues with the guidelines for career offenders and crack cocaine crimes are common pre-sentencing topics that the Court has seen presented in other cases numerous times. In essentially every case dealing with either crack cocaine crimes or defendants with higher criminal history levels, counsel is likely to raise objections in their sentencing memorandums to the crack cocaine guidelines or the career offender guidelines.

*Mosley*, 779 F.Supp.2d at 401-02. However, in this case, while these issues were present, defense counsel did not even file a sentencing memorandum on Defendant's behalf as the plea negotiations essentially resulted in an agreed-upon sentence for Defendant at the mandatory minimum of 10 years. *See Plea Agreement* at ¶¶ C.1., C.3. As a consequence, sentencing issues which were not even litigated before the Court do not, in and of themselves, warrant a finding that Davis' case was complex.

Considering all of the factors raised by Burney, including: the length of representation; change of counsel and case agent for the prosecution; the suppression issues; the plea negotiations; and, the sentencing issues, this Court does not believe they are sufficient to meet the standard of complex and extended to warrant excess compensation. In fact, courts in this District have rejected requests for excess compensation in matters that included more time and effort by appointed counsel than the instant case. For example, in *United States v. Tillman*, 2010 WL 2245033 (W.D.Pa. Jun. 3, 2010), Chief Judge Lancaster denied appointed counsel's request for compensation in excess of the statutory maximum, finding that the case was neither extended nor complex.[17] The litigation of that case included both a suppression hearing and a jury trial. *Id.* Neither proceeding was necessary here because this case was resolved by way of a guilty

---

[17] The Court is also aware that the Honorable Alan Bloch denied a motion by counsel for Defendants Karla S. Podlucky and Jesse Podlucky for interim payments and to certify that the case against these defendants was extended and complex under the Guidelines. *See United States v. Podlucky, et al.*, Cr. 11-37 (W.D.Pa. 2011). The Court notes that Judge Bloch's ruling was made prior to trial rather than after the case had concluded as it is presently before this Court. However, the case against these defendants relates to one of the most extensive frauds in the history of this district.

plea.  (Docket No. 166).  And, the pretrial motions which were filed by the defense were never challenged by the Government nor ruled upon by the Court.  (*See* Docket No. 165 ("Defendant's pending Pretrial Motions [143] – [153] ordered terminated as moot.")).

In light of the above, the Court finds that the representation in this case was neither extended nor complex and will not approve compensation in excess of the statutory maximum of $9,700.  While some courts which have rejected compensation claims in excess of the statutory amount and approved $9,700 as fair compensation without further inquiry, *see Tillman*, 2010 WL 2245033, the facts and circumstances of this case and the fees claimed by counsel warrant further scrutiny.

### B.  Fair Compensation

#### 1.  Lack of Contemporaneous Records / Vagueness of Time Entries

Before addressing Burney's specific time entries, the Court notes that the instant fee petition and time sheets are plagued by counsel's own time-keeping practices, which do not comply with the procedures set forth in the Guidelines for Administering the CJA and Related Statutes or case law interpreting same.  The Guidelines require counsel to maintain contemporaneous time records which are subject to audit and, to the extent that an amount in excess of the statutory maximum is claimed, or when requested by the Court, provide a detailed memorandum justifying all time claimed in the voucher.  *See Guide to Judiciary Policy, Vol. 7A*, §§ 230.30.30, 230.76.[18]  Burney's time keeping practices fail in both regards.

---

[18]    § 230.76 Record Keeping
    (a)Appointed counsel must maintain contemporaneous time and attendance records for all work performed, including work performed by associates, partners, and support staff, as well as expense records.
    (b)Such records are subject to audit and must be retained for three years after approval of the final voucher for an appointment.

Initially, Burney admitted that he does not maintain contemporaneous or concurrent time records in any of his cases, and did not do so in present matter.  Specifically, he advised the Court of the following regarding his general practices:

> As I said, I have six pads which are handwritten notes. And what I try to do in a particular case, when I open up a case, I try to keep notes as far as whatever I'm doing, as an estimate, and some time parts. So, what I have here are six pads that go from the beginning, which is the date of the court appointment, which was July 2, 2008, until the date of the sentencing, which was, of course, May 3, 2011.
>
> So, what I do is, usually I'm not keeping track of the total amount of time that's spent on a case until the case is over. Then, when the case is over, then, I go back for billing purposes, and then, add up.

*9/9/11 Hr'g Trans* at 7.  The fact that counsel reconstructs the time claimed at the conclusion of the case by estimating the amount of time spent on the listed tasks, rather than keeping contemporaneous records, raises questions about the accuracy of the records themselves.  *Cf. Brown v. City of Pittsburgh*, 2010 WL 2207935, at *7 (W.D.Pa. May 27, 2010) (quoting *Webb v. County Bd. of Educ.*, 471 U.S. 234, 238, n.6) ("contemporaneously recorded time sheets are the preferred practice" in attorney fee claims under the Civil Rights Act).  Indeed, the Court's concerns were heightened after comparing Burney's handwritten notes in his notepads to his timesheet and finding numerous errors between the handwritten time entries and those reported on the timesheet.  For example, the Court easily found the following errors:

| DATE | DESCRIPTION | I/C | RECORDS | RESEARCH/ WRITING | TRAVEL | Notes | Diff |
|---|---|---|---|---|---|---|---|
| 7/2/2008 | Ct appt/review records | | 1 | | | 0.4 | 0.6 |
| 9/17/2008 | PC(s) – AUSA Rivetti | 0.6 | | | | 0.4 | 0.2 |

---

*Guide to Judiciary Policy, Vol. 7A*, § 230.76.  The Court further notes that, consistent with this subsection, the National CJA Voucher Program, Attorney "Dos" and "Don'ts" explicitly advises appointed counsel to "don't wait until after final case disposition to create time and attendance records for all work performed."

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3/31/2009 | Conf / Defendant – Ohio | 1 | | | | 0.8 | 0.2 |
| 6/30/2009 | Review Records | | 1 | | | 0.6 | 0.4 |
| 11/4/2009 | Conf / Defendant – Ohio | 3 | | | | 2.8 | 0.2 |
| 7/14/2010 | Conf / Defendant – ACJ | 1.4 | | | | 1.3 | 0.1 |
| 12/11/2010 | Conf / Defendant – ACJ | 1.5 | | | | 1.4 | 0.1 |
| 3/31/2011 | Conf / Defendant – ACJ | 1.5 | | | | 1.4 | 0.1 |
| | **Total Discrepancy** | | | | | | **1.9** |

It is important to note that each of these discrepancies resulted in an **increase** between the handwritten notes and the time claimed on the timesheet. Therefore, reductions are in order for each of these entries, commensurate with Burney's own handwritten records.

In addition, because counsel has failed to keep contemporaneous time records, as is his duty under the CJA, the Court has difficulty performing its function under the CJA to audit the records, evaluate the reasonableness of the time claimed in each of the entries and certify that the amounts claimed are reasonable. The Court's review of the present matter is further obfuscated by the vague, ambiguous and conclusory descriptions of the tasks allegedly performed by counsel in this case. Courts have refused to certify compensation for attorneys who provide such deficient requests in their vouchers. *See United States v. Mukhtaar*, 2008 WL 2151798, at *5 (S.D.N.Y. May 21, 2008) (rejecting a time entry for "legal research" because the court could not "assess the reasonableness of the claimed time without knowing to which aspect of [the defendant's] case the research pertained."). Here, nearly all of counsel's time entries fail to explain to the Court the actual tasks which were performed. Instead, counsel repeatedly makes the following general entries in his time sheet: "conference"; "PC" or phone conference; "review records"; or "research."[19] In this Court's estimation, these types of entries are not sufficient

---

[19] The Court notes that Burney would not risk disclosure of his work product and/or disclosure of information protected by the attorney-client privilege by including more detailed descriptions of the tasks performed. It is the Court's duty to safeguard such information in accord with section 510.30 of the guidelines, which provides, in pertinent part, that:

under § 230.30.30 of the Guidelines and they would likewise not be acceptable in a fee petition by a prevailing party in a Civil Rights or employment case or by any corporate client to which a bill is submitted in private practice.

The Court believes that it would be much better practice for counsel to maintain detailed, contemporaneous records of the tasks performed – as the Guidelines dictate. *See Guide to Judiciary Policy, Vol. 7A*, § 230.76. These types of records facilitate the Court's audit and enable an expeditious ruling on the matter. In the present case, counsel's entries were deficient and the Court was tasked with reviewing his entire file (including his handwritten notepads) to determine what tasks he actually performed in this case. *See Guide to Judiciary Policy, Vol. 7A*, §§ 230.30.30, 230.76. Of course, the burden is on counsel to provide the Court with sufficient information to justify his request for fees and not on the Court and its staff to review his entire file to find support for his unsubstantiated requests. *See Mukhtarr*, 2008 WL 2151798. However, the Court did review Burney's handwritten notes and several of the entries on his timesheet either did not have corresponding handwritten notes or contained no further description of the tasks performed. For example, the following entries contain vague descriptions and have no further support in the handwritten notes:

---

§ 530.10 Limitations on Disclosure
Generally, such information which is not otherwise routinely available to the public should be made available unless it:
    (a) is judicially placed under seal;
    (b) could reasonably be expected to unduly intrude upon the privacy of attorneys or defendants;
    (c) could reasonably be expected to compromise defense strategies, investigative procedures, attorney work product, the attorney-client relationship or privileged information provided by the defendant or other sources; or
    (d) otherwise adversely affect the defendant's right to the effective assistance of counsel, a fair trial, or an impartial adjudication.
*See Guide to Judiciary Policy, Vol. 7A*, § 510.30.

| DATE | DESCRIPTION | I/C | RECORDS | RESEARCH/ WRITING | TRAVEL | Notes |
|---|---|---|---|---|---|---|
| 7/3/2008 | Research | | | 1 | | "research on charges" |
| 7/15/2008 | Review disc. Records | | 2.4 | | | No handwritten notes |
| 7/15/2008 | Research | | | 2 | | No handwritten notes |
| 9/2/2008 | Review Records | | 2 | | | No handwritten notes |
| 9/2/2008 | Research | | | 2 | | No handwritten notes |
| 9/3/2008 | Conf / Defendant – Ohio | 3.5 | | | | No handwritten notes |
| 5/26/2009 | Review Records | | 1 | | | No handwritten notes |
| 6/11/2009 | Review Records | | 1 | | | "look at records" |
| 12/5/2010 | Research | | | | | "research" |
| 4/20/2011 | Research | | | 1 | | No handwritten notes |
| **SubTotals** | | **3.5** | **6.4** | **6** | | **15.9 hours** |

In light of the foregoing authority, these entries are unsupported and no compensation is awarded for the time claimed.

For these reasons, the Court reduces the fees' claimed by 1.9 hours as a result of counsel's time keeping errors and rejects another 15.9 hours as unsupported by the record, for a total of 17.8 hours.

2. Application of the "Fair Compensation" Criteria

Despite these general deficiencies, which result in an immediate reduction of 17.8 hours, the Court will evaluate the fairness of the compensation claimed by Burney in his other entries which have yet to be reduced. Courts have recognized that generally "[o]nly reasonably competent and productive time is deserving of recompense under the CJA." *Jackson v. United States*, 2010 WL 3927873, at *2 (E.D.Tex. Oct. 4, 2010) (quoting *Chamblin v. I.N.S.*, 176 F.Supp.2d 99, 104-05 (D.N.H. 2000)). To this end, "the Court is guided by considerations of fairness and necessity. Fairness dictates that a panel member not receive less than that to which he is entitled for the services performed. The requirement that the services for which counsel are

compensated be necessary ensures that attorneys who work inefficiently or pad their bills do not reap a windfall for spending more time than needed on a given case." *United States v. Sepulveda*, 502 F.Supp.2d 1104, 1110 (D.Mont. 2007). In determining reasonableness, the Court finds helpful the criteria set forth in the Guidelines, including:

> • responsibilities involved measured by the magnitude and importance of the case;
> • manner in which duties were performed;
> • knowledge, skill, efficiency, professionalism, and judgment required of and used by counsel;
> • nature of counsel's practice and injury thereto;
> • any extraordinary pressure of time or other factors under which services were rendered; and
> • any other circumstances relevant and material to a determination of a fair and reasonable fee.

*Mukhtaar*, 2008 WL 2151798, at *4-5.

Here, the Court agrees with Burney's statements in his handwritten brief and during the ex parte conference regarding the weighty responsibility placed upon him to represent a defendant who, like Davis, faces a significant period of incarceration whether by a mandatory minimum sentence under a statute or the career offender provision of the guidelines. *See 9/9/11 Hr'g Trans* at 11; *see also Mosley*, 779 F.Supp.2d at 405 ("Defending a client against a claim with a high mandatory sentencing minimum, such as in a crack cocaine case like this one, is a heavy responsibility—but is one that is undertaken frequently by CJA appointees."). This was certainly a significant case as Davis faced both a 10-year mandatory minimum and the career offender guideline, i.e., an advisory guideline range of 262-327 months' incarceration. (*See* Docket No. 177). The Court also does not question the adequacy of Burney's representation of Davis. Indeed, as the Court earlier indicated in a letter to Burney and stated on the record during the ex parte hearing, the Court continues to believe that Burney performed well on Davis' behalf, provided more than adequate representation to him and achieved an excellent result for him

through his plea negotiations, i.e., a sentence at the mandatory minimum of 10 years. *9/9/11 Hr'g Trans.* at 5. As a consequence, these criteria weigh in Burney's favor.

However, the other criteria weigh against him. There were no extraordinary time pressures in this case as the case lasted for two years, ten months and one day. (Crim. No. 08-204). There is also no evidence that the representation of Davis caused any disruption to Burney's practice – which focuses on criminal defense work in federal and state court. *9/9/11 Hr'g Trans* at 8. Indeed, Burney has been compensated handsomely by the United States District Court for the Western District of Pennsylvania for his services as a CJA panel attorney as he has received $195,758.42 over the past three years (including $62,934.31 in 2009; $67,155.29 in 2010; and $65,668.82 thus far in 2011).[20]

With respect to the remaining factors, the Court takes issue with the manner in which the services were performed by Burney, particularly, the lack of efficiency which is clearly evident in his time entries, as is discussed in further detail in the following sections. Defense counsel's experience also weighs against him when evaluating the present fee requests. *See Mosley*, 779 F.Supp.2d at 405-06 (quoting *Jackson v. United States*, Civ. A. No. 09-1039, 2010 WL 3927873, at *4 (E.D. Tex. Oct. 1, 2010) ("[counsel] is a knowledgeable and experienced criminal defense attorney, having practiced in the field for over a decade. His extensive experience should have 'reduced the need for legal research on basic issues.'")). Burney is a seasoned criminal defense attorney with a wealth of experience working on and defending criminal cases. *9/9/11 Hr'g Trans* at 8. He was admitted to the Pennsylvania Bar in 1972. He then spent a year as a judicial law clerk in the Court of Common Pleas of Allegheny County – Criminal Division and next moved on to the Public Defender's Office in Allegheny County, where he worked for a year. *Id.* He later spent eight years in the District Attorney's Office, where he ultimately became a

---

[20]     These figures were provided to the Court by the Clerk's Office.

supervisor. *Id.* Since 1980, he has been in private criminal defense practice and avers that he has been on the Court's CJA Panel for the past 12 years.[21] *Id.* In this Court's estimation, given defense counsel's significant experience, and the nature of this case, he should have been able to perform the services provided much more efficiently and without running up a nearly $30,000 bill.

   a.   Comparison of Fees Requested by Burney to Fees Claimed by Counsel for Co-Defendants

With respect to the reasonableness of the fees claimed, the Court first finds that the amounts claimed by Burney in the present petition are not reasonable when compared to the amounts claimed by counsel for the co-defendants in this case. *Cf. Mosley*, 779 F.Supp.2d at 403 ("fee requests that appear higher than usual often are given the benefit of the doubt when viewed in a vacuum, and it is only when all the bills are analyzed at once that a pattern of high billing is revealed"). To this end, counsel for co-defendant Murphy received $3,220.00 in compensation and counsel for co-defendant Purnell received $3,834.32 in compensation. (Docket Nos. 90, 142). Thus, the total amount claimed here by Burney, $29,831.50, is nearly nine times the amount received by counsel for Murphy and nearly eight times the amount received by counsel for Purnell. In this Court's estimation, the facts and legal issues which were present in the three cases were such that they do not warrant such an extreme difference in the amounts claimed. From the Court's perspective, having presided over all three cases, the only discernable differences between the cases were that: Purnell and Davis were viewed by the Government as more culpable than Murphy in the instant conspiracy; and, Davis had the most significant criminal history, qualifying him as a career offender under the sentencing guidelines. (*See* The Court's Tentative Findings and Rulings, Docket Nos. 76, 134, 177).

---

[21]    Based on information provided to the Court by the Clerk's Office, Burney has been paid a total of $195,758.40 for his service on the CJA panel over the past three years (i.e., during 2009, 2010 and thus far in 2011).

Burney attempted to justify the differences in the amounts claimed by the attorneys in the three cases by citing many of the same reasons set forth above, including: pretrial suppression issues; the lengthy plea negotiations; and sentencing issues stemming from Davis' status as a career offender and the application of the crack cocaine guidelines. *9/9/11 Hr'g Trans* at 9-13, 17-18. The Court is not persuaded as his arguments are not supported by the record. Indeed, a closer review of Burney's time records indicates that his bill exceeded those submitted by counsel for the co-defendants before he had even started to meaningfully investigate any of these issues.

For example, Murphy pled guilty on September 24, 2008. (Docket No. 67). By that time, Burney had already claimed 33.5 hours and $3,350 of out-of-court time and 0.6 hours and $60 of in-court time for a total of $3,410 – which exceeds counsel for Murphy's entire bill (33.2 hours; $3,220.00). Murphy was then sentenced on January 23, 2009. (Docket No. 82). Burney's bill for out-of-court time by the date of her sentencing had increased to $5,020 based on 50.2 claimed hours.

In addition, by the time Purnell pled guilty on November 12, 2009, (Docket No. 125), Burney had claimed $10,490 in out-of-court fees, exceeding the case compensation maximum of $9,700 which is presently in place. Of course, on the date of Purnell's plea, the case compensation maximum was only $8,600 and Burney had previously exceeded this lower amount in July of 2009. *See Guide to Judiciary Policy, Vol. 7A*, § 230.23.30. Moreover, the only task that Burney had performed by the time of Purnell's plea was to file a motion for a pre-plea presentence investigation report on Defendant's behalf, requesting that the United States

Probation Office investigate Davis' criminal history and to provide a recommendation regarding whether Davis qualified as a career offender. (*See* Docket No. 88).[22]

The Court also isolated the time claimed by Burney which could reasonably be attributed to the three proffered reasons for his excess fees, i.e., his review of records, research and filing of pretrial motions; plea negotiations; and preparation for the sentencing hearing, and found that the time claimed for each of these portions of the case exceeded counsel for the co-defendants' bills for their entire cases. To this end, Burney claims: $4,100 from June 21 to July 16, 2010 which can be attributed to his filing of pretrial motions; another $4,525 from October 26, 2010 to December 28, 2010 which can be attributed to plea negotiations; and, $4,325 between the change of plea and sentencing proceedings. The fees requested for each of these portions of Davis' case exceeds the fees requested by counsel for the co-defendants for their <u>entire</u> representation of the co-defendants.

In general, the Court finds the fee amounts claimed by Burney to be unreasonable when compared to those requested by appointed counsel for the co-defendants given the numerous similarities between the cases and that Burney spent and has reported more time than was reasonably necessary to provide effective representation to Davis in this case. The excess time claimed by Burney does not represent "reasonably competent and productive time [...] deserving of recompense under the CJA." *Jackson*, 2010 WL 3927873, at *2. The Court further believes that approving the amounts claimed in the present voucher would result in a "windfall" to Burney by compensating him for working inefficiently and completing numerous unnecessary tasks in this case. *Sepulveda*, 502 F.Supp.2d at 1110 ("The requirement that the services for which counsel are compensated be necessary ensures that attorneys who work inefficiently or

---

[22] As is discussed *infra*, Burney claims 1.6 hours for the preparation and filing of his motion for a pre-plea presentence report – a document which contains four numbered paragraphs of substance on one page. (Docket No. 88).

pad their bills do not reap a windfall for spending more time than needed on a given case."). Similarly, such compensation would not be fair to the other CJA appointed counsel in this case, who worked within the Guidelines and made reasonable requests for compensation or other CJA panel members who likewise voluntarily work within the required parameters set by the Court. *Cf. Id.* ("Fairness dictates that a panel member not receive less than that to which he is entitled for the services performed.").

Notwithstanding the Court's conclusion that the amount of hours claimed and fees requested are unreasonable,[23] further scrutiny of Burney's bill is necessary as his requests in each of the listed categories are excessive, containing unnecessary charges and inflated time entries. Specifically, he claims that the Court should authorize compensation for a total of 252.7 hours of out-of-court preparation time, delineated as follows:

| Description | Hours |
|---|---|
| Interviews and Conferences | 100.2 |
| Obtaining and reviewing records | 43.2 |
| Legal research and brief writing | 44.2 |
| Travel time | 65.1 |
| **Total** | **252.7** |
| **Total $$** | **29,831.50** |

The Court now turns to the described legal task categories and will address each, in turn.

    b. Interviews/Conferences & Attendant Travel Time

Burney claims a total of 100.2 out of court conference hours and 65.1 hours of travel time. He seeks compensation of $19,160.50 ($11,554.00 and $7,606.50, respectively) for these

---

[23] It is inconceivable to this Court that 252.7 hours of out-of-court preparation time, which is the equivalent of more than six weeks of full-time forty-hour-per-week legal preparation, was necessary in this case. *See United States v. Yaggi-Velasco*, 2011 WL 2647899 (E.D.Pa. Jun. 24, 2011) (noting that "[t]he total of 227.5 hours of compensation sought for both in-court and out-of-court time is the equivalent of nearly six weeks of full-time forty-hour-per-week legal preparation for a simple, straightforward, routine, one-count charge of reentry after deportation where defendant was found in this country after deportation without having applied for, or having received permission to apply for, reentry.").

portions of his bill.    In contrast, counsel for Murphy claimed 17.9 out of court conference hours and no travel time while counsel for Purnell claimed 10.13 hours and only 4 hours of travel time. (Docket Nos. 90, 142).  This disparity is stunning to the Court.

The vast majority of the time claimed by Burney for both out-of-court conferences and travel time result from numerous in-person meetings with the Defendant, who was incarcerated during the pendency of this case.  Specifically, of the 100.2 hours of interview and conference time claimed, 74.4 hours are claimed for in-person visits with the Defendant and another 54.6 hours of travel time as compensation for the time he spent driving to and from his office in McKeesport to the Northeast Ohio Correctional Center and the Allegheny County Jail to meet with Defendant.   Indeed, Burney visited with Defendant 22 times at the NEOCC and 28 times at the ACJ during the two years, ten months and one day that this case was pending.

As discussed above, all of Burney's time entries for his 50 jail visits are deficient as they each state only "Conf / Defendant – Ohio" or "Conf / Defendant – ACJ", giving the Court appropriate grounds to reject **all** of the time claimed for the visits.    However, the Court has considered Burney's oral argument and the handwritten notes of the tasks he performed during each visit.  Burney argued that the time claimed was fair because of the length of the case, the time needed to build the trust of the defendant, the defendant's difficulty in understanding the case, the need for a factual investigation of the case, and because of his preference that all communications with his clients be in-person rather than over the phone due to the fact that jail phone calls are recorded.  *See 9/9/11 Hr'g Trans* at 9-13, 17-18. Despite these proffered reasons, Burney admitted that his time for in-person conferences has been reduced by other Judges in this District and that he has been accused of "coddling" his clients due to the significant amount of time that he typically spends with them during a case.  *See 9/9/11 Hr'g Trans.* at 9.

As to the Defendant's ability to understand the subject matter of the case and the legal ramifications of same, including the penalties he faced, Burney merely stated that Defendant, like many of his clients, had a limited educational background and required significant explanation of the issues in the case. Burney did not cite any document in the record supporting this claim. However, the Presentence Investigation Report states that "the defendant reported no history of psychiatric or mental health problems," which would prevent his understanding of the circumstances or require additional time for counseling same. PIR at ¶ 47. The PIR does demonstrate that Defendant had a limited educational background as he withdrew from school in 1995, when he was in the 9th grade. PIR at ¶ 49. He also advised Probation that "he was not a good student and was always placed in special education programs because he was unable to read well. He is studying to earn his General Education Diploma (GED), and he feels that his reading ability has improved. He would like to pursue additional education in any of the following areas: brick laying, HVAC, or college level courses." *Id.* From the Court's view, the record supports a finding that some additional time was likely needed to explain the subject matter of the case to the Defendant. But, the record does not support Burney's claim for nearly seventy-five hours (or almost two whole weeks) of one-on-one conferences with the Defendant – who was a career offender based on his multiple prior convictions and obviously very familiar with the criminal justice system. *See* PIR at ¶¶ 31-36. A seasoned criminal defense attorney like Burney should have been able to explain the legal issues in this case to Defendant much more efficiently.

Burney also explained to the Court that he refuses to communicate with his clients over the telephone because all phone calls made by inmates while incarcerated at the Allegheny

County Jail are recorded.[24]  *9/9/10 Hr'g Trans.* at 26.  He attempted to justify his practice of only meeting in person with his clients by citing recent developments including an accusation by the Federal Public Defender's Office that Assistant United States Attorneys had listened to conversations between attorneys and defendants which should be protected by the attorney-client privilege.  *Id.* at 26-27.  Burney stated that he cannot "take the chance" that his conversations with his clients would be exposed to the prosecution and if the Court felt that a reduction in his time for this reason was appropriate, he stated "so be it."  *Id.*  The Court does not believe that counsel's "no-call" policy supports the extent of compensation he claims and will thus significantly reduce same.  In this Court's opinion, Burney's records demonstrate that he made many unnecessary visits to the jails – for which no compensation should be awarded.  Moreover, Burney does not explain why he could not have advised Defendant of the status of his case or other pertinent matters via written correspondence rather than communicating with him only during in-person visits or over the telephone.  In addition, Burney's unilateral policy whereby he refuses to contact his incarcerated clients by telephone enables him to essentially "double dip" by claiming compensation for travel time to and from the jails for visits, in addition to the time

---

[24]     The Allegheny County Jail policies provide that all outgoing inmate telephone calls are recorded with the exception of telephone calls made by the inmate to attorney's offices.  *See United States v. Korbe*, 2010 WL 2776337, at *2-3 (W.D.Pa. Jul. 14, 2010).  The ACJ maintains a database of attorney's phone numbers and the telephone system is programmed to not record inmate calls to attorneys on the list.  *Id.*  However, the Court is aware that in the fall of 2009, certain inmate to lawyer phone conversations were recorded and inadvertently provided to the United States Attorney's Office, resulting in much publicity.  *See Jail taped inmate-lawyer calls – 'Incensed' public defender says attorney-client rights at risk*, Pittsburgh Post-Gazette, Oct. 23, 2009, *available at:* http://www.post-gazette.com/pg/09296/1007757-53.stm (last visited 11/30/11); *U.S. attorney defends role in tapped jail calls – Buchanan says possible breach of client-attorney (sic) privilege resolved*, Pittsburgh Post-Gazette, Oct. 24, 2009, *available at:* http://www.post-gazette.com/pg/09297/1008072-455.stm (last visited 11/30/11).  The Court understands that the matter involving the phone system in 2009 has since been resolved.

Burney made no mention of a similar policy and/or problems with telephone communications with clients at the NEOCC.  Therefore, his argument has no bearing on the Court's finding that 22 visits to the NEOCC was clearly unreasonable given the status of the case during the time he was incarcerated there – from July 2008 through December 2009.

spent actually meeting with his clients.[25]  For example, a one hour meeting with a client in the NEOCC results in claimed compensation of 4.5 hours, while a one hour meeting with a client in the AJC results in claimed compensation of 2.4 hours.  The Court also questions whether Burney is prorating his travel time in the event he is visiting multiple defendants at any location.

The excesses claimed by Burney are exemplified by his first attempted visit to see Davis on July 5, 2008 at the Allegheny County Jail.[26]  Burney's notes indicate that he drove to the jail from his office, only to be informed that Davis had been transferred to the NEOCC.  Although he did not meet with Davis, he still claimed .2 hours for conferences and 1.4 hours in travel time on this date.  Certainly, a phone call to the jail ahead of this visit would have obviated the need for such conference and travel time.  Accordingly, the Court rejects the claimed conference and travel time as no legal services were ever provided to Davis for this visit.  *See Guide to Judiciary Policy, Vol. 7A* § 230.60(a) ("time spent in **necessary** and **reasonable** travel is compensable").

Apparently Burney did not learn from his earlier mistake because his records reflect that he traveled to the NEOCC in Ohio on January 5, 2010 intending to meet with Davis and was advised after he arrived that Davis had been transferred to the ACJ on **December 8, 2009**! Burney claims 0.8 hours for his meeting with co-defendant Purnell and 3.5 hours for his travel to and from the prison in Ohio.  While Burney used his time to make an unannounced visit with Purnell, who actually was housed at the NEOCC at the time and interview him, it is yet another indication of poor inefficiencies in Mr. Burney's practice of meeting with his clients only at the jail.  In contrast, Purnell's own counsel only claimed a total of 4 hours of travel time for representing him during his entire case!  (Docket No. 142).  The Court likewise refuses to award

---

[25]      In fact, many of the time entries indicate that Burney's visits with Davis were shorter than the travel time claimed for each entry.
[26]      The Court notes that Burney incorrectly stated during the ex parte conference that he was able to visit with Davis one time at the ACJ before he was transferred to the NEOCC.  *See 9/9/11 Hr'g Trans.* at 14.  As noted, his own handwritten notes state that he arrived at the jail and was told that Davis was no longer incarcerated there.

Burney any compensation for this meeting, including his unnecessary travel to Ohio on this occasion.[27]  *See Guide to Judiciary Policy, Vol. 7A,* § 230.60(a).

Burney also filed twelve motions for extensions of time to file pretrial motions in this case, extending the period time within which to file pretrial motions from July 15, 2008 through July 16, 2010.   (Docket Nos. 48, 62, 70, 77, 84, 96, 106, 114, 127, 129, 138, 140).   In each motion, counsel averred that the extension of time was necessary "to enable counsel to adequately investigate and prepare pretrial motions."   (*Id.*).   During this two-year time period, while this case remained stagnant, Burney seeks compensation for 45.1 hours of out-of-court time for in-person conferences with his client and 28 hours for travel time to and from the jails. As is discussed in explicit detail below, the pretrial motions which were filed in this case were routine and do not warrant the amount of compensation claimed for legal research and writing that Burney claims.   *See* § III.B.2.b., *infra*.   For many of the same reasons addressed in that section, the substance of (or lack thereof) the pretrial motions which were filed by Burney in this case also undermines his claim that 45.1 hours of time for out-of-court meetings with his client were necessary prior to filing the pretrial motions.   In this Court's view, the motions that were filed could have been brought on Defendant's behalf after one meaty meeting or a few short meetings with Davis, if the Court gives credence to Burney's statements that he had to build trust with Davis.

The timing of many of the visits to the jail also troubles the Court.   His records show that he made repeated trips during short periods of time.   For example, Burney visited Defendant: three separate times at the NEOCC in March of 2009; four separate times at the NEOCC in June of 2009; twice at the NEOCC in November of 2009; five separate times at the ACJ in July of

---

[27]    Indeed, this Court has required in other cases that appointed counsel must seek approval for making any out-of-state travel for purposes other than meeting with an incarcerated defendant.

2010; three times at the AJC in August of 2010; seven times at the AJC in December of 2010; and four times encompassing April and early May of 2011. Burney has not provided sufficient explanation supporting why these repeated visits during such short periods of time were necessary. Indeed, Burney claimed that he was very efficient in his trips to the jail by visiting with multiple inmates on a single day at the NEOCC or ACJ. *See 9/9/11 Hr'g Trans* at 14. But, also he contradicted himself by stating that he felt obligated to meet with all of his clients on days that he visited the jails because they spoke amongst themselves and if he did not visit a client, that client may become upset with him.[28] A review of Burney's handwritten notes confirms that many of the visits appear to be unnecessary to the representation for which Burney was appointed except to help Burney build a relationship with the Defendant.[29] For example, Burney's notes show that many of the visits consisted of: very similar factual questioning by counsel; status reports that the position of the United States Attorney's Office had not changed regarding the Defendant's case and the co-defendant's cases; and repeated discussions of the significant penalties faced by the Defendant.

Additionally, Burney requests $2,250 in compensation for 9.6 hours of out-of-court conference time and 8.4 hours of attendant travel time for meetings held with Defendant in early 2011 after he pled guilty pursuant to a plea agreement by which the parties essentially agreed that a sentence of 120 months should be imposed by the Court. By this time, a pre-plea presentence report calculating the Defendant's criminal history had already been produced and the Probation Office's conclusion that Defendant qualified as a career offender was never

---

[28]    This statement was informally made to the Court after the court reporter had closed the record.

[29]    Of course, this Court is not authorized to approve compensation for appointed counsel performing "services of a personal nature and expenses incidental thereto which cannot be considered legal representations." *See Guide to Judiciary Policy, Vol. 7A*, § 230.66.20(b). Burney admitted to the Court that much of the time he spent with Davis was used to build a relationship with him, so that Davis would trust him. *See 9/9/11 Hr'g Trans.* at 13. Trust is certainly paramount in any attorney-client relationship; however, the record in this case does not come close to justifying the nearly seventy-five hours Burney spent in out-of-court conferences with his client.

challenged by the defense. The career offender designation was then bargained away by the Government in plea negotiations; leaving no disputed issues at sentencing. Indeed, Burney did not file a sentencing memorandum on his client's behalf and only argued that Defendant should be given credit for time served in presentence custody.[30] There is simply no justification for the amount of time claimed by Burney for out-of-court conferences with the Defendant after his guilty plea was entered.

Having fully considered the matter, including the fees claimed by counsel for the co-defendants in this case, and the lengthy plea negotiations necessitating several client meetings in late 2010, the Court believes that significant reductions in the amount of time claimed for in-person conferences with the Defendant are appropriate given the large amount of unnecessary time spent in such conferences by counsel in this case. As a consequence, the Court will reduce the time claimed for such conferences from 74.1 hours to 15 hours.

As to the 65.1 hours claimed for "travel time," § 230.60 provides that "time spent in **_necessary_** and **_reasonable_** travel is compensable" and "includes only those hours actually spent in or awaiting transit." *Guide to Judiciary Policy, Vol. 7A* § 230.60(a), (b) (emphases added).[31] Therefore, the travel time claimed for Burney's travel to and from unnecessary conferences with Davis during which he provided him with information that could have been handled via letter or over the telephone is likewise rejected.

---

[30]     As the Court recognized in its Tentative Findings and Rulings in this case, "[u]nder 18 U.S.C. § 3585(b), the Bureau of Prisons ("BOP") has the exclusive authority to determine if a defendant is entitled to presentence credit for time served prior to the commencement of his sentence. *See United States v. Wilson*, 503 U.S. 329, 333-34, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992*); Ruggiano v. Reish*, 307 F.3d 121, 132 (3d Cir. 2002). At most, this Court may issue a non-binding recommendation to the BOP that Defendant be granted credit for time served, which the BOP is not required to follow. *See Bailey v. Nash*, 134 Fed. Appx. 503, 506 (3d Cir. 2005) (not precedential)." (Docket No. 177 at 6-7). Again, Burney is an experienced criminal defense attorney and should be well aware that the Court can only issue non-binding recommendations for presentence credit.

[31]     In addition, compensation for travel time is paid at the same rate as attorney-hours. *Guide to Judiciary Policy, Vol. 7A,* § 230.60(c).

At the outset, the Court challenged Burney to provide information supporting his requests for his repeated local trips from McKeesport to the Allegheny County Jail and other points within the City of Pittsburgh, including the Federal Courthouse. *See 9/9/11 Hr'g Trans.* at 4-5. The Court questioned whether this type of local travel was incident to his representation of <u>all</u> of his clients and if it was only claimed because Burney chose to make his office in the McKeesport area rather than in downtown Pittsburgh. *Id.* Despite the Court's specific request, Burney provided the Court with no such authority and/or information supporting his requests for compensation for local travel in his handwritten brief or during the ex parte conference. The Guidelines do not specifically state that such local travel should not be compensated and the Court has approved local travel from other points outside of downtown Pittsburgh in the past. *See Guide to Judiciary Policy, Vol. 7A* §§ 230.60, 230.63.40. However, as reflected in the In Court Hourly Worksheet form used in this District, appointed counsel are not automatically[32] compensated for travel time attendant to their representation of indigent defendants during in-court proceedings such as the arraignment, change of plea and sentencing proceedings in this case.[33] *See In Court Hourly Worksheet, available at:* http://www.pawd.uscourts.gov/Documents/ Forms/cjatableincourt.pdf (last visited 11/18/11). The Guidelines further provide that travel time is only compensable for travel attendant to services provided under the CJA and must be apportioned if any other matters are handled which also necessitated the travel. Specifically, § 230.60(d) provides that:

---

[32]    To this end, the form does not include a column for "travel time."

[33]    In this case, Burney attempts to circumvent this potential restriction by claiming time for conferences held with Defendant at the courthouse and accompanying travel on the date of all in-court proceedings in this case, including: 2.0 hours for a conference and 1.4 hours of travel time on the date of Defendant's arraignment, July 7, 2008; 0.8 hours for a conference and 1.4 hours of travel time on the date of Defendant's change of plea, December 28, 2010; and, 1.0 hour and 1.4 hours of travel time on the date of Defendant's sentencing, May 3, 2011. Yet, the Court is aware Burney did not request any travel time during his appointment in *United States v. Cal Sitting*, Cr. No. 06-194, and none was awarded, despite the fact that he maintained the same office in McKeesport at that time.

(d)If such travel is made for purposes in addition to representing the person whom the attorney has been appointed to represent under the CJA, the court will determine whether, in fairness to the appointed attorney, the travel time should be apportioned, and the appointed attorney compensated for that portion of the travel time reasonably attributable to the performance of the attorney's duties under the CJA. In determining whether such travel time should be so apportioned, the court may consider:

the time reasonably expended in the performance of the attorney's duties under the CJA, in relation to the time expended furthering other purposes of the trip;

the significance to the representation of the duties performed; and

the likelihood that the attorney would have made the trip to perform the duties under the CJA in the absence of the other purposes for making the trip.

*Guide to Judiciary Policy, Vol. 7A*, § 230.60.

Here, Burney claims that he made 28 trips to the ACJ and seeks compensation for travel time to and from 22 of these visits. His handwritten notes reflect that he claimed travel time on his voucher submitted for his representation of other federal defendants and/or to attend a hearing in federal court for the other 6 visits.[34] He also claims compensation for 5 other local trips. Burney is not solely a federal practitioner but also defends individuals in state criminal cases, which necessarily includes travel to downtown Pittsburgh from his McKeesport office. But, he made no effort to demonstrate to the Court that the only business he conducted while on his trips to downtown Pittsburgh related solely to the representation of defendants for which he was appointed counsel under the CJA. *See 9/9/11 Hr'g Trans.* As a consequence, the Court cannot determine if all of the 28 jail visits and his 5 other trips to the federal courthouse related solely to his representation of Davis and not unrelated matters for which compensation from the federal government is not authorized. Therefore, the Court rejects all of the time claimed for local travel time to and from the Allegheny County Jail and the Federal Courthouse, as it is

---

[34]     Although not claimed in the present petition, Burney seeks compensation from the United States for all of his travels.

incumbent upon him to support his claims.[35]  *See Mukhtaar*, 2008 WL 2151798, at *2; *see also*

*Guide to Judiciary Policy, Vol. 7A*, §§ 230.30.30, 230.76.

Although his records reflect that he made 22 trips to the NEOCC, Burney only claims

travel time for 6 of the visits with Davis.[36]  It appears to the Court that Burney charged his travel

to other clients for the 16 other visits.  The number of visits still deeply concerns the Court given

all of the inefficiencies in Burney's practices which are apparent in this case.  However, the

Court will authorize payment for travel for 4 of the visits to the NEOCC as some travel to meet

with Davis would be necessary in this case.

For all of these reasons, the vast majority of the time claimed by Burney for in-person

conferences with the Defendant and attendant travel time is not supported by the record.  As a

consequence, significant reductions in the time claimed from 74.4 hours of in-person conferences

to 15 hours and from 65.10 hours of travel time to 14 hours of travel time are warranted.

Burney also claims a total for 18.4 hours of conferences with the Assistant United States

Attorneys who were assigned to this case.  As is discussed above, this runs directly counter to

Burney's claim that this litigation was "extended" because the prosecutors did not maintain

---

[35]   The Court notes that although the recent revisions of the Guidelines are not applicable to the Court's review of the instant voucher, the changes would support this disposition.  *See discussion* at n.10, *supra*. To this end, revised § 230.50(g) provides, in pertinent part, that:

> If the attorney is billing under the CJA for time or expenses, including travel, that were spent in common for a purpose other than a CJA representation, the attorney must report such information so that the court can determine whether, in fairness to counsel, the time or expenses should be apportioned and the attorney compensated for the time or expenses reasonably attributable to the CJA.

*Guide to Judiciary Policy, Vol. 7A*, § 230.50(g) (effective 10/24/11).  Thus, under the revised version the burden is appropriately placed squarely on the attorney to provide the Court with information about all of the matters attended to during travel for which compensation is sought.  *Id.*

[36]   As noted earlier in this section, travel time is not awarded for Burney's out-of-state travel to meet with co-defendant Purnell because he traveled to Ohio on that occasion to meet with Davis without first verifying that he was incarcerated at the NEOCC.

contact with him or continue to negotiate for substantial periods of time, causing the majority of the delays in this case. The Court does recognize that compensation is warranted for the time spent in plea negotiations in this case. *See Mosley*, 779 F.Supp.2d at 406 ("It is true that it appears the plea negotiations with the government in this case may have required more time than usual, and that would justify some level of excess compensation. While the Court recognizes that the additional plea negotiations may justify a departure from the statutory maximum, it does not mean that the full amount requested by [counsel] is reasonable and necessary to provide fair compensation."). But, Burney's notes do not reflect that all of the telephone conversations with Government counsel encompassed actual plea negotiations and many of his notes specifically detail that the time he claims consisted of his leaving messages with the AUSAs or their staff. Curiously, even these time entries receive at least a .2 in his time sheets, indicating that a minimum of 12 minutes was spent on each of these tasks.[37] Given the overall deficiencies with Burney's timekeeping practices and the grossly inflated entries in the other categories, the Court believes that his recorded time in this category is overstated as well. In sum, the Court believes that fair compensation for the time spent discussing the case in conferences with Government counsel for plea negotiations of 10 hours is appropriate.

Finally, the Court accepts the time claimed with respect to conferences held with the Probation Office, including 1.3 hours of telephone conferences and 3.4 hours in person, for a total of 4.7 hours.

---

[37] The Court notes that the Guidelines do not specifically set forth the degree of accuracy that must be maintained for time keeping, but both the in court and out of court hourly worksheets, which are provided to counsel by the Court for counsel to track their time, state that an attorney must "report all time in tenth-of-hour increments (eg, 6 mins=.1 hr)." *See Out of Court Hourly Worksheet*, *available at:* http://www.pawd.uscourts.gov/Documents/Forms/ cjatableoutofcourt.pdf (last visited 11/29/11); *see also In Hourly Worksheet*, *available at:* http://www.pawd.uscourts.gov/Documents/Forms/cjatableincourt.pdf (last visited 11/29/11). Upon review of his timesheets, Burney does not claim .1 (or 6 minutes) for the completion of *any* task in this case.

For these reasons, the Court believes that significant reductions of Burney's hours are necessary and "fair compensation" in this category would be 19.7 hours for out-of-court conferences and 14 hours of travel time to attend the meetings with Davis at the NEOCC.

c.    Obtaining / Reviewing Records

Burney next seeks compensation of $4,952.00 for 43.2 hours of "obtaining and reviewing records."  In contrast, counsel for Purnell sought compensation of $621.00 for 5.7 hours in this category and counsel for Murphy claimed only $100.00 for 2.0 hours accomplishing these types of tasks.  (Docket Nos. 90, 142). The Court acknowledges that Davis' case possibly involved a more documentation given his extensive criminal history but still finds that Burney's requests are excessive, unsupported by the record and contain inflated entries.  As noted above, the Court has reviewed the entirety of Burney's file.  The case-related records contained in the file are limited to the case filings on CM/ECF, draft and the final plea agreements, police reports, laboratory reports, the Defendant's rap sheet, other prior criminal conviction records and documents generated by the Probation Office, including a pre-plea presentence report, presentence report and addendum.  Burney has not made any requests for compensation for time that he spent "obtaining records."  Indeed, upon review of the file, it appears that Burney relied on the records which were provided to him by the Government through discovery and supplemental discovery and those documents produced and/or obtained by the Probation Office.   To this end, the file does not contain any formal or informal discovery requests made by Burney to third parties in preparation of the defense in this case.   Therefore, because Burney spent no time actually "obtaining" the records, he allegedly spent 43.2 hours reviewing the aforementioned documents throughout this case.  The Court is more than troubled by this claim.

Burney's entries in this category consist of the following:

| DATE | DESCRIPTION | RECORDS | RATE | TOTAL | Handwritten notes |
|---|---|---|---|---|---|
| 7/2/2008 | Ct appt/review records | 1 | 100 | 100 | .4 |
| 7/7/2008 | Review records | 0.6 | 100 | 60 | |
| ~~7/15/2008~~ | ~~Review disc.  records~~ | ~~2.4~~ | ~~100~~ | ~~240~~ | |
| 7/31/2008 | Review Police Reports | 3 | 100 | 300 | "review police reports" |
| ~~9/2/2008~~ | ~~Review Records~~ | ~~2~~ | ~~100~~ | ~~200~~ | |
| 11/7/2008 | Review Records | 2 | 100 | 200 | |
| 12/27/2008 | Review Records | 2 | 100 | 200 | "review file; police reports" |
| 2/16/2009 | Review Records | 1.2 | 100 | 120 | "review police rpts; indictment; compare statements of potential witnesses" |
| ~~5/26/2009~~ | ~~Review Records~~ | ~~1~~ | ~~110~~ | ~~110~~ | |
| 6/5/2009 | Review Letter | 0.2 | 110 | 22 | "receive letter from Teddy, review" |
| ~~6/11/2009~~ | ~~Review Records~~ | ~~1~~ | ~~110~~ | ~~110~~ | |
| 6/30/2009 | Review Records | 1 | 110 | 110 | .6 |
| 11/12/2009 | Review records - codefendant | 1 | 110 | 110 | |
| 11/13/2009 | Review records | 1 | 110 | 110 | "review summaries of change of pleas of co-defs; indictment; ind memo" |
| 12/29/2009 | Review Records | 1 | 110 | 110 | |
| 2/7/2010 | Review records for meeting | 2 | 125 | 250 | "review  police rpts for meeting" |
| 6/21/2010 | Review Records | 2 | 125 | 250 | |
| 6/23/2010 | Review Records | 2 | 125 | 250 | |
| 6/28/2010 | Review Records | 1 | 125 | 125 | |
| 7/9/2010 | Review Outline | 1.6 | 125 | 200 | |
| 10/26/2010 | Review Agreement | 1.8 | 125 | 225 | "review plea agreement proposed by govt" |

| | | | | | |
|---|---|---|---|---|---|
| 11/29/2010 | Review Agreement | 1.4 | 125 | 175 | |
| 12/5/2010 | Review Records | 1.2 | 125 | 150 | "review plea letter; review file" |
| 12/13/2010 | Review Records | 1.4 | 125 | 175 | "review docs; lab rpts; police rpts; pre-plea report; proposed plea letter" |
| 12/20/2010 | Review New Agreement | 1.6 | 125 | 200 | |
| 3/4/2011 | Review PSR | 1.6 | 125 | 200 | |
| 3/12/2011 | Review PSR | 1 | 125 | 125 | |
| 3/24/2011 | Review Final PSR | 1.4 | 125 | 175 | |
| 4/2/2011 | Review PSR | 0.6 | 125 | 75 | |
| 4/19/2011 | Review PSR Addendum | 0.2 | 125 | 25 | |
| 4/20/2011 | Review Tentative Findings | 1 | 125 | 125 | |
| 5/2/2011 | Review Records for hearing | 1 | 125 | 125 | "review pleadings for sentence" |
| SUBTOTAL | | 43.2 | | 4952 | |
| ADJUSTMENT | Rejected in § III.B.1, supra | 5.0 | 100 | 500 | |
| ADJUSTMENT | Reduced in § III.B.1, supra | 2.4 | 110 | 264 | |
| ADJUSTMENT | Rejected in § III.B.2.d , infra | 6.6 | 125 | 825 | |
| TOTAL | | 29.2 | | 3,363 | |

After adjusting the time claimed by eliminating and/or reducing the entries for the reasons discussed above, Burney requests compensation of $3,363 for 29.2 hours of reviewing documents. However, in this Court's opinion, Burney has claimed inordinate amounts of time to accomplish simple, routine tasks. For example, he claims that it took him over an hour to review each of several versions of plea agreements (6 pages each) and he allegedly spent at least six hours total reviewing these various drafts. Likewise, he requests compensation for spending 4.6 hours reviewing different versions of the presentence reports (18 pages) produced by the Probation Office and another 1 hour reviewing this Court's Tentative Findings and Rulings (12 pages). He also appears to claim time spent repeatedly reviewing the same documents, such as

the police reports, laboratory reports, the indictment and indictment memorandum. As a consequence, a significant reduction of the time entries is appropriate. In sum, considering the small number of documents in Burney's file, the contents of same and the amounts claimed by counsel for the co-defendants in this category, the Court believes that fair compensation for "obtaining and reviewing records" is limited to 10 hours and $1,250.

### d. Legal Research / Brief Writing

Finally, Burney claims 44.6 hours for "legal research/brief writing." Like the other categories, the time entries in this section are vague and lack the specificity necessary to conduct a meaningful examination of the time Burney claims he expended in this case. In addition, the Court cannot discern from the time records or Burney's file, what, if any, actual legal research was undertaken by Burney in this case. There is not a single statute or case in the file which was provided to the Court for review. There are also no records from online legal websites such as Lexis or Westlaw demonstrating that legal research was indeed conducted. The only documents which Burney cited and claimed as research[38] are legal briefs filed by other attorneys in other cases and emails originating from the Public Defender's Office and other panel attorneys which generally discuss the state of the law, rulings by Judges in this District and elsewhere and provide suggestions for defending federal cases. Burney was given ample opportunity to provide the Court with information supporting his request for 44.6 hours but did not meet his burden to

---

[38] The Court is not persuaded that reviewing the memoranda provided by the Public Defender's Office and other like communications constitutes research which is compensable under the CJA. This Court is permitted to approve compensation to Burney only for those tasks, such as research of legal issues, which are *necessary* to the representation of Davis in this case. *See* 18 U.S.C. § 3006A(d)(3). Moreover, the purpose of the CJA is to provide counsel for indigent defendants like Davis. It is not to compensate counsel for time spent attaining general knowledge of federal criminal law or reviewing the types of updates on the law which are provided by the Probation Office as set forth in the emails in his file. *See United States v. Brooks*, 2011 WL 3688831, at *14 (E.D.Cal. Aug. 4, 2011) (quoting *United States v. Hamilton*, No. 96-10018-02, 1996 WL 633619, at *2 (D.Kan. Oct. 8, 1996) ("An appointment under the CJA assumes familiarity with the basic rules governing criminal [matters] … and counsel should not be compensated under the Act for reviewing those rules."). Finally, Burney's extensive experience in criminal law "should have reduced the need for legal research on basic legal issues." *Mosley*, 779 F.Supp.2d at 405-06 (quoting *Jackson*, 2010 WL 3927873, at *4).

do so. Therefore, for these reasons and other specified below, the Court will significantly reduce the fees in this category to 8.4 hours.

The excesses claimed by Burney are exemplified by his requests in relation to his filing of pretrial motions. Along with his voucher, he has provided the following time entries which can be reasonably attributed to his filing of pretrial motions on Davis' behalf:

| DATE | DESCRIPTION | I/C | RECORDS | RESEARCH/ WRITING | TRAVEL | RATE | TOTAL |
|------|-------------|-----|---------|-------------------|--------|------|-------|
| 6/21/2010 | Review Records | | 2 | | | 125 | 250 |
| 6/21/2010 | Research | | | 2 | | 125 | 250 |
| 6/23/2010 | Review Records | | 2 | | | 125 | 250 |
| 6/24/2010 | Research | | | 3 | | 125 | 375 |
| 6/26/2010 | Research | | | 2 | | 125 | 250 |
| 6/28/2010 | Review Records | | 1 | | | 125 | 125 |
| 6/28/2010 | Research | | | 1.4 | | 125 | 175 |
| 7/7/2010 | Preparation Motions Outline | | | 3 | | 125 | 375 |
| 7/9/2010 | Research | | 2 | | | 125 | 250 |
| 7/9/2010 | Review Outline | | 1.6 | | | 125 | 200 |
| 7/12/2010 | Preparation Motions | | | 2.8 | | 125 | 350 |
| 7/13/2010 | Preparation Motions | | | 2.4 | | 125 | 300 |
| 7/14/2010 | Conf / Defendant - ACJ | 1.4 | | | 1.4 | 125 | 350 |
| 7/15/2010 | Preparation Motions | | | 2.8 | | 125 | 350 |
| 7/16/2010 | Preparation / Filing Motions | | | 2 | | 125 | 250 |
| | SUBTOTALS | 1.4 | 8.6 | 21.4 | 1.4 | | 4100 |

At the ex parte conference, Burney provided some explanation regarding the pretrial motions filed in this case, including the pretrial motion to suppress which he believed involved significant issues and preparation time. However, Burney admitted that many of the motions were routine. Indeed, in response to the Court's comments at the outset of the hearing, he stated that:

> The Court is correct. A lot of the motions that were involved are motions that we go through all the time in asking for discovery and the different motions. But the crux of this particular case was going to be dealing with the motion to suppress the evidence that was found in the location where the three individuals were arrested.

51

*9/9/11 Hr'g Trans* at 16. Given his admission, the Court researched Burney's other cases in this District to compare the types and content of pretrial motions he has filed on behalf of other defendants. The results of the Court's investigation demonstrate that Burney filed canned pretrial motions in this case, motions which he had previously prepared and filed in other cases and continues to use. For example, prior to filing the pretrial motions in this case, on April 1, 2010, Burney filed very similar (if not identical) pretrial motions in *United States v. Roger Laron Underwood*, Cr. No. 08-411-21.[39] The motions filed in *Underwood* and *Davis* which are virtually identical,[40] include:

> (1) Motion for Disclosure of Additional Rule 404(b) Evidence
>      a. *Underwood*, Docket No. 1174;
>      b. *Davis*, Docket No. 145
> (2) Motion for Bill of Particulars
>      a. *Underwood*, Docket No. 1176;
>      b. *Davis*, Docket No. 143
> (3) Motion to Compel Disclosure of Plea Bargains, Preferential Treatment, and Promises to Government Witnesses With Citation of Authority
>      a. *Underwood*, Docket No. 1177;
>      b. *Davis*, Docket No. 144
> (4) Motion for Additional Discover [sic]
>      a. *Underwood*, Docket No. 1180
>      b. *Davis*, Docket No. 146
> (5) Defendant Motion to Require Law Enforcement to Retain Rough Notes,[41]
>      a. *Underwood*, Docket No. 1181;
>      b. *Davis*, Docket No. 150

---

[39] The Court is aware that the Honorable Terrence McVerry is also auditing Burney's request for attorney fees in the *Underwood* matter.

[40] The only discernable differences between these motions filed in Davis' and Underwood's cases include the substitution of Davis's name for Underwood's and a change to the amount of crack cocaine involved in the two cases. Even a typographical error in the title of the "Motion for Additional Discover [sic]" filed in Underwood's case remains in the motion later filed in Davis' case. Many of these same motions were also filed in *United States v. Alvin M. Thomas*, Cr. No. 06-299 on May 18, 2009.

[41] The Court notes that the substance of this motion is identical to a motion filed by Douglas Sughrue on behalf of co-defendant Purnell on April 15, 2009 in Criminal Number 08-204 at Docket No. 93. The filing in Purnell's case predates the submissions in both Underwood and Davis by Burney. Burney then used this motion again in a later case, *United States v. Terrance Clark*, Cr. No. 08-411-21 (Docket No. 931).

(6) Defendant Motion to Prohibit Jencks Material In the Presence of the Jury
    a. *Underwood*, Docket No. 1182;
    b. *Davis*, Docket No. 151

(7) Defendant Motion to Require Prosecution to Reveal Any Agreement, Concession or Grant of Immunity
    a. *Underwood*, Docket No. 1183;
    b. *Davis*, Docket No. 152

(8) Motion for James Hearing
    a. *Underwood*, Docket No. 1184;
    b. *Davis*, Docket No. 149

(9) Motion of Defendant for Early Disclosure of All "Jencks Act" Material
    a. *Underwood*, Docket No. 1188;
    b. *Davis*, Docket No. 147

(10) Defendant Motion for Leave to File Additional Motions Following United States' Full Disclosure of Discovery Materials
    a. *Underwood*, Docket No. 1179;
    b. *Davis*, Docket No. 153

The only motions that Burney filed in both cases which are substantively different were the pretrial motions to suppress filed in both cases. Before the Court addresses the motion to suppress, the Court notes the practice of using rote motions is disfavored even though such motions might create efficiencies for a practitioner. In fact, the instructions accompanying the Guidelines explicitly state that attorneys should not request compensation for their use of "standardized motions" which do not require "significant modification." *See CJA Form 26A, Guidance to Attorneys in Drafting the Memorandum Required For a Compensation Claim in Excess of the Case Compensation Maximum: District Court* ("Motions legal memoranda, jury instructions, and sentencing documents, or legal research not resulting in such, which were drafted originally for this case (**<u>do not include standardized motions, etc., unless content was modified significantly</u>**).""). This appears to have been exactly what occurred in this case as Burney claims an excessive amount of time for the preparation of his standardized motions which he files routinely in his cases. In this Court's estimation, little effort was put forth in these

motions aside from Burney's initial decision to file them.  In fact, the entries on the Court's CM/ECF System shows that Burney filed the first of the pretrial motions on Davis' behalf at 11:19 p.m. and the last one at 11:43 p.m., further evidencing that little effort was required to prepare and file the motions.[42]   As a consequence, the Court awards **no** time for the preparing and filing of these pretrial motions which Burney repeatedly uses in the defense of federal criminal cases.

The record also does not support the $3,750 claimed by Mr. Burney for the review of records and preparation and filing of the pretrial motions.[43]   The only motion for which compensable time is appropriate is Defendant's motion to suppress but the work product produced by Burney does not support a claim of 21.4 hours of legal research and writing nor 8.6 hours of reviewing records for the preparation of same.  To this end, the motion to suppress is one page long, single-spaced and contains two citations to authority.  (Docket No. 148).  The two cases which are cited, i.e., *United States v. Kithcart*, 134 F.3d 529, 531 (3d Cir. 1998) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)) (internal quotation marks omitted) and *Mapp v. Ohio*, 367 U.S. 643 (1961), are only cited for long-standing, well-settled legal propositions and should have required no research by such a seasoned defense attorney.   In addition, as is discussed above, the suppression issues raised in the motion were straightforward – involving a warrantless search by police of a home where the defendant was present.  These issues are not significantly argued in

---

[42]    The actual filing of the motions on the CM/ECF System constitutes a non-compensable secretarial task. *See* § 230.66.10(b) ("Except in extraordinary circumstances, whether work is performed by counsel or other personnel, the following expenses associated with CJA representation are not reimbursable … secretarial."); *see also United States v. Brooks*, 2011 WL 3688831, at *10 (E.D.Cal. Aug. 4, 2011) (noting that secretarial tasks are not reimbursable under the CJA).  No time is awarded for the filing of documents.

[43]    The time claimed is even less reasonable when compared to the compensation paid to counsel for the co-defendants in this case.  Purnell's counsel filed similar pretrial motions to those filed by Burney.  But, Purnel's counsel was much more efficient, filing each of his various motions as a single document.  Sughrue's total bill for his representation of Purnell, including in-court hearings, was $3,832.42.  On the other hand, between June 21, 2010 and July 16, 2010, Burney claims 30 hours of reviewing records, research, preparing motions and the like.  At $125 per hour, the statutory rate in 2010, Burney claims a total of $3750.00 which can reasonably be attributed to his preparation of the pretrial motions.  This represents ninety-seven (97) percent of Sughrue's total bill.

the motion to suppress and the work product produced by Burney does not support the time claimed. At most, Burney's time spent analyzing the case and preparing the motion to suppress, as filed, involved a total of two hours of compensable legal work.

The time entries for the other tasks claimed for legal research and writing in the petition are likewise deficient. Specifically, Burney requests the following:

| Date | Description | Research | Rate | Total Claimed | Handwritten |
|---|---|---|---|---|---|
| ~~7/3/2008~~ | ~~Research~~ | ~~1~~ | ~~100~~ | ~~100~~ | |
| ~~7/15/2008~~ | ~~Research~~ | ~~2~~ | ~~100~~ | ~~200~~ | |
| ~~9/2/2008~~ | ~~Research~~ | ~~2~~ | ~~100~~ | ~~200~~ | |
| 11/10/2008 | Research | 1 | 100 | 100 | "review file for interview" |
| 2/23/2009 | Research | 1.2 | 100 | 120 | 851 enhancements; penalties; career offender |
| 3/27/09 | Draft / File – Early PSR | 1.6 | 110 | 176 | |
| 6/5/2009 | Research | 1 | 110 | 110 | "review file for answers for Teddy" |
| 10/26/2010 | Research | 2.4 | 125 | 300 | "guidelines; variance; 851; mandatory min appeals" |
| 11/29/2010 | Research | 2 | 125 | 250 | "check out arguments for Teddy research" |
| 12/4/2010 | Research | 1.2 | 125 | 150 | "review file; guidelines; career offender; new law – mandatory; plea agreement offer" |
| ~~12/5/2010~~ | ~~Research~~ | ~~1.4~~ | ~~125~~ | ~~175~~ | |
| 3/4/2011 | Research | 1.4 | 125 | 175 | "credits for time served at state for same charges" |
| 4/2/2011 | Research | 0.6 | 125 | 75 | |
| 4/4/11 | Draft / File Position | 1.8 | 125 | 228 | |
| ~~4/20/2011~~ | ~~Research~~ | ~~1~~ | ~~125~~ | ~~125~~ | |
| Subtotal | | 18.2 | | 3,380 | |
| ADJUSTMENT | | (7.4) | | | |
| Total | | 10.8 | | | |

Initially, the Court reduces the time spent drafting and filing Defendant's motion for filing a pre-plea presentence investigation report and his position with respect to sentencing factors to .5 hours, each. The Court also rejects the time claimed for reviewing Davis' file on November 10, 2008 (1 hour) and June 5, 2009 (1 hour), as neither event constitutes legal research and writing. The other entries appear to be appropriate. With these reductions (4.4 hours), the total amount is reduced to 6.4 hours.

In accord with the aforementioned rulings, the Court awards 8.4 hours for legal research and writing.

IV. CONCLUSION

Based on the foregoing, the Court finds that Burney has not met his burden to demonstrate to the Court that this case was complex or extended and, the Court finds that fair compensation for Burney's representation of Defendant should be adjusted downward as follows:

| Description | Initially Claimed | Awarded |
|---|---|---|
| In-Court Time | 2.6 | 2.6 |
| Interviews and Conferences | 100.2 | 19.7 |
| Obtaining and reviewing records | 43.2 | 10 |
| Legal research and brief writing | 44.2 | 8.4 |
| Travel time | 65.1 | 14 |
| **Total Hours** | **255.3** | **54.7** |
| **Total $$** | **$29,831.50** | **$6,837.50** |

The Court also believes that $6,837.50 represents "fair compensation" for the services provided by Burney in this case although it is well aware that this fee award is more than twice the amount approved for counsel for co-defendant Murphy ($3,220.00) and nearly twice the amount approved for co-defendant Purnell ($3,834.32). The Court finds that, despite the factual and

legal similarities in the three cases, additional compensation is warranted in this case given the lengthy plea negotiations in Davis' case; the fact that Davis was the last of the three defendants to plead guilty; and the result that Burney achieved for Davis.

The Court recognizes that the amount of compensation approved in this case is a significant reduction of the hours initially claimed by Burney. "Counsel's hours, however, are not the point of reference when assessing whether to waive the congressionally mandated maximum allowance of $9,700.00 for a CJA award. Instead, the focus is on the nature of the case itself and whether the facts and legal issues rendered the case extended or unusually complex." *Tillman*, 2010 WL 2245033, at *2 (citation omitted). Moreover, even in cases where the Court does not find that the case is extended or complex, only "reasonably competent and productive time is deserving of recompense under the CJA." *Jackson*, 2010 WL 3927873, at *2. Here, Burney did not meet his burden to justify the extraordinary fees claimed in his petition as resulting from such "reasonably competent and productive time." *Id.* "[A]ttorneys who accept CJA appointments must recognize the compensation limits," *Yaggi-Velasco*, 2011 WL 2647899, at *5, and follow the requirements for approval of fee petitions contained in the *Guide to Judiciary Policy, Vol. 7A* and decisions interpreting same. These standards were not met in this case; hence, substantial reductions to counsel's requested fees are necessary.

"Finally, in accordance with § 230.36[44] of the CJA guidelines, counsel is afforded fourteen (14) days to address the matter in writing in the form of a motion for reconsideration."

---

[44]   Section 230.36 provides that:
       (a) The CJA provides that the reviewing judge shall fix the compensation and reimbursement to be paid to appointed counsel. If the court determines that a claim should be reduced, appointed counsel should be provided:
       • prior notice of the proposed reduction with a brief statement of the reason(s) for it, and
       •an opportunity to address the matter.
       (b) Notice need not be given to appointed counsel where the reduction is based on mathematical or technical errors.

*Tillman*, 2010 WL 224033, at \*3. During this period of time, counsel is also advised to review this Memorandum Opinion for any necessary redactions under the attorney-client privilege. *See Guide to Judiciary Policy, 7A*, § 510.30. If no objections or redactions are submitted, this Memorandum Opinion will be filed of record.


<u>*s/Nora Barry Fischer*</u>
Nora Barry Fischer
United States District Judge


Date:   December 8, 2011

cc:   Alonzo Burney, Esq.
      502 Fifth Avenue
      Suite 301
      McKeesport, PA 15132

---

(c) Nothing contained in this guideline should be construed as requiring a
hearing or as discouraging the court from communicating informally with
counsel about questions or concerns in person, telephonically, or electronically,
as deemed appropriate or necessary.